

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1734-10

### ALAN JOEL GEICK, Appellant

### v.

### THE STATE OF TEXAS

### ON DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### AUSTIN COUNTY

Womack, J., delivered the opinion of the unanimous Court.

The appellant was indicted for theft by deception. At trial, the jury charge allowed for a conviction without limiting the manner in which the theft was committed. The jury found the appellant guilty "as charged in the indictment" and sentenced him to 3 years in prison and a $10,000 fine.

The Fourteenth Court of Appeals acquitted the appellant because there was no evidence

of deception.[1] We refused the State's petition for discretionary review, but we granted review on our own motion on the ground, "Did the Court of Appeals err in requiring the State to prove theft by deception, where deception was alleged in the indictment?"

We hold that if an indictment uses a statutory definition to specify how a theft was committed, the State must prove the offense as charged in the indictment. Because the State produced no evidence of deception, we shall affirm the Court of Appeals.

## I. Background

### A. Investigation & Trial

In June 2005, acting on an anonymous tip that there was stolen machinery at the site, state and county law-enforcement officers searched a wooded property in Austin County belonging to the appellant's parents. They recovered numerous pieces of stolen machinery, including a bulldozer. In August 2005, an Austin County grand jury indicted the appellant, and in November 2008 the State amended the indictment to charge that:

> Alan Joel Geick on or about January 15, 2005 ... in Austin County, Texas, did then and there unlawfully appropriate, by acquiring or otherwise exercising control over property, to-wit: bulldozer, of the value of $20,000.00 or more but less than $100,000.00 from F. Phillips, the owner thereof, without the effective consent of the owner, namely, by deception, with intent to deprive the owner of the property ....

At the appellant's trial in February 2009, the State presented four witnesses, none of whom said how the appellant acquired the bulldozer. A Department of Public Safety sergeant told the jury about the investigation and the machinery found during the search. One neighbor testified that he had responded to an advertisement and hired the appellant to use the bulldozer on

---

[1] *Geick v. State*, 321 S.W.3d 706 (Tex. App.–Houston [14th Dist.] 2010).

his property. A second neighbor said that he had seen the appellant using the bulldozer on the first neighbor's property. Finally, Flavil Phillips testified that the bulldozer belonged to his company, that it was stolen from a work site in Harris County, that he did not know who stole it, and that it was insured for $32,000 at the time of the theft. Phillips said he did not know the appellant.

The defense called the appellant and his wife, Ashley. The appellant testified that he had bought the bulldozer from a friend's father, Clint Hampton, whose landscaping business owned several pieces of large equipment. The appellant said that Hampton agreed to take installment payments for the bulldozer and give the title to the appellant after the last payment was made. The appellant said he paid Hampton in cash and had no receipts. Ashley testified that she went with the appellant when he bought the bulldozer, and that the appellant had made several payments on the bulldozer, either with checks or cash. She said they had no receipts for the payments.

The application paragraph of the jury charge, unlike the indictment, was not limited to theft by deception:

> Now, if you find from the evidence beyond a reasonable doubt that on or about JANUARY 15, 2005, in Austin County, Texas, the defendant, ALAN JOEL GEICK, did intentionally or knowingly appropriate, by acquiring or otherwise exercising control over property, to-wit: bulldozer, of the aggregate value of more than $20,000.00 and less than $100,000.00, from F. PHILLIPS, the owner thereof, without the effective consent of the owner, with the intent to deprive the owner of the property, then you will find the defendant guilty of theft as charged in the indictment.

The definition section of the charge used portions of the statute concerning the nature of consent:

> "Effective consent," includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion or given by a

person the actor knows is not legally authorized to act for the owner.[2]

The appellant made no objection to the jury charge, and the jury found him guilty "as charged in the indictment."

## B. Direct Appeal

On appeal, the appellant argued, among other points, that the State was required to prove that the theft was committed "by deception," as alleged in the indictment, and that the evidence at trial was legally insufficient to prove deception.

Relying on our opinions in *Malik v. State*[3] and *Gollihar v. State*,[4] and its own opinion in *Jacobs v. State*,[5] the Fourteenth Court of Appeals agreed with the appellant and acquitted him.[6] The Court of Appeals based its decision on two premises: (1) To determine sufficiency, evidence is compared to the hypothetically correct jury charge, which is based on "the law as authorized by the indictment." (2) "[W]hen the statute defines alternative methods of manner and means of committing an element [of the offense] and the indictment alleges only one of those methods, 'the law' for purposes of the hypothetically correct charge, is the single method alleged in the indictment."[7] Therefore, because the indictment alleged that the theft was committed by deception but no evidence of deception (as that term is defined in the Penal Code) emerged at

---

[2] *See* TEX. PEN. CODE § 31.01(3).

[3] 953 S.W.2d 234 (Tex. Cr. App. 1997).

[4] 46 S.W.3d 243 (Tex. Cr. App. 2001).

[5] 230 S.W.3d 225 (Tex. App.–Houston [14th Dist.] 2006, no pet.)

[6] *Geick*, 321 S.W.3d, at 714.

[7] *Id.*, at 709-10.

trial, the appellant was entitled to an acquittal.[8]

## II. Review

## A. Legal Sufficiency Review

The Court of Appeals's first premise is indisputably true. On a challenge to the sufficiency of the evidence, a court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[9]

To determine what "the essential elements of the crime" are, we look to "the hypothetically correct jury charge for the case."[10] A hypothetically correct jury charge "would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."[11]

When a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, "the law as authorized by the indictment" is limited to the method specified in the indictment.[12] Thus, in *Curry v. State*, in which the indictment alleged that the defendant "abducted" the victim "by using and threatening to use deadly force," one of two statutory means of abducting a victim, the hypothetically correct jury

---

[8] *Id.*, at 711.

[9] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

[10] *Malik*, 953 S.W.2d, at 240.

[11] *Id.* After this description, we noted that "[t]his list is not necessarily exhaustive." *Id.*, at n. 5.

[12] *Gollihar*, 46 S.W.3d, at 254-55.

charge included that specific allegation.[13] Proof that the defendant abducted the victim by "secreting or holding him in a place where he is not likely to be found," the other statutory method of abduction,[14] would not have supported a conviction.[15]

However, when an indictment needlessly pleads an allegation that gives rise to an immaterial variance, that allegation will not be included in the hypothetically correct jury charge.[16] In *Gollihar*, the indictment alleged that the defendant stole "One Go-Cart [*sic*] Model 136202," but the evidence at trial was that the stolen Go Kart was model 136203.[17] Because the model number was not a statutory element and the inaccurate allegation of the model number did not prejudice the defendant's substantial rights, the model number did not factor into a sufficiency review.[18]

### B. Theft and the Hypothetically Correct Jury Charge

In this case, we must determine what "the law authorized by the indictment" is in a theft case. In order to charge theft, absent a notice-based motion to quash, a charging instrument need allege only the statutory elements of the offense: the charged person unlawfully appropriated

---

[13] 30 S.W.3d 394, 404-05 (Tex. Cr. App. 2000).

[14] TEX. PEN. CODE § 20.01(2).

[15] *See also Planter v. State*, 9 S.W.3d 156, 159 (Tex. Cr. App. 1999) (evidence was insufficient in solicitation for capital-murder case, where indictment alleged one statutory method of committing offense: that defendant requested another to commit capital murder, but evidence showed alternative statutory method of committing offense: that defendant requested that another pay defendant in exchange for defendant committing capital murder).

[16] *Gollihar*, 46 S.W.3d, at 257.

[17] *Id.*, at 244.

[18] *Id.*, at 257-58.

property with the intent to deprive the owner of property.[19] Had the indictment charged the appellant merely in those terms, that would be "the law authorized by the indictment" for purposes of the hypothetically correct jury charge.

The simplicity of the statutory elements of theft hides the complexity of the overall scheme. Penal Code § 31.02 explains that our current theft statute was meant to encompass what had previously been a dozen or more distinct offenses. The comprehensive nature of the statute becomes apparent in the definitions offered to explain the terms of the basic offense. In Sections 31.01 and 31.03 there are three ways in which appropriation can be unlawful, two ways to appropriate, three types of property, and three ways to deprive. One of the ways in which appropriation is unlawful is that "it is without the effective consent of the owner." Section 31.01(3) lists five ways in which consent is not effective.[20] One of those is that the consent was "induced by deception or coercion;" and Sections 1.07(9) and 31.01(1) combine to offer eleven different definitions of coercion and deception.

The State in this case used these statutory definitions to allege a more narrow offense than was required. The indictment specified one of the two means of appropriation:[21] that the appellant acquired or otherwise exercised control over property other than real property. The indictment specified one of the three ways in which appropriation can be unlawful:[22] that the

---

[19] *Ex Parte Luna*, 784 S.W.2d 369, 371 (Tex. Cr. App. 1990) (op. on rehearing); *see* TEX. PEN CODE § 31.03(a).

[20] This list does not include the most basic sort of theft, in which there is a complete lack of consent. *See Thomas v. State*, 621 S.W.2d 158, 166 (Tex. Cr. App. 1981) (Clinton, J., concurring and dissenting to the op. on rehearing).

[21] TEX. PEN. CODE § 31.01(4).

[22] TEX. PEN. CODE § 31.03(b).

appropriation was without the effective consent of the owner. And the indictment specified one

of the five circumstances that make consent ineffective:[23] deception.

The State argues that these more specific phrases in the indictment were definitions, not

elements of the offense, and therefore should not be part of the hypothetically correct jury charge.

The State uses our recent decision in *Cada v. State*[24] to argue that there is a distinction in this

case between definitions and elements. However, comparing the structures of the theft statute and

the retaliation statute that was at issue in *Cada* shows that the State's distinction does not exist in

this case.

Cada was charged with threatening a witness under Penal Code § 36.06, "Obstruction or

Retaliation." We described this statute as "a good example of the 'Chinese Menu' style of setting

out the elements of a penal offense":[25]

> (a) A person commits an offense if he intentionally or knowingly harms or
> threatens to harm another by an unlawful act:
>> (1) in retaliation for or on account of the service or status of another as a:
>>> (A) public servant, witness, prospective witness, or informant; or
>>> (B) person who has reported or who the actor knows intends to
>>> report the occurrence of a crime; or
>> (2) to prevent or delay the service of another as a:
>>> (A) public servant, witness, prospective witness, or informant; or
>>> (B) person who has reported or who the actor knows intends to
>>> report the occurrence of a crime.

To charge an offense under this statute, the State must make choices. In "Chinese Menu"

parlance, the State must pick one from column (a), and, then depending on its choice, pick one

from either column (1) or column (2).

---

[23] TEX. PEN. CODE § 31.01(3).

[24] 334 S.W.3d 766 (Tex. Cr. App. 2011).

[25] *Id.*, at 770.

Without a notice-based motion to quash, however, it need not make additional choices to get more specific than that. "Thus an indictment might contain allegations that the defendant retaliated against the complainant because [the complainant] was 'a public servant, witness, prospective witness, and informant,'" and evidence proving any of those possibilities would support a conviction.[26]

In *Cada*, the State specified that the defendant threatened to assault the victim "in retaliation for or on account of the service of [the victim] as a witness."[27] The State made its required choices from column (a) and column (1), but it also made an unnecessary choice among the options in column (A). The evidence at trial showed that the victim was an informant, not a witness.[28] We held that, even though the State was not required to make its allegation as narrow as it did, due process required the State to "prove the statutory elements that it has chosen to allege, not some other alternative statutory elements that it did not allege," and acquitted Cada.[29]

Unlike § 36.06, the theft statute (absent a notice-based motion to quash) does not force the State to make any choices. The unaltered statutory language itself describes an offense: "unlawfully appropriat[ing] property with intent to deprive the owner of property."

The State does not argue that all departures from the bare statutory text may be ignored on sufficiency review. The State concedes that the definition contained in § 31.03(b), describing when appropriation is unlawful, is a description of the manner and means in which the offense

---

[26] *Id.*, at 771.

[27] *Id.*, at 768.

[28] *Id.*, at 775.

[29] *Id.*, at 776.

was committed and thus, if pled, the State must prove it. However, the State's position is that anything not contained in § 31.03 is a mere definition that need not be proved, even when pled. We find no reason to distinguish between the definitions contained in § 31.01 and the kinds of unlawful appropriation in § 31.03(b).

Instead, we believe that, when pled, all of these definitions become the elements of latent, more specific offenses encompassed within our general theft statute. As a general rule, the State is under no obligation to plead these more specific offenses, but, as we held in *Cada*, if the State unnecessarily chooses between statutory alternatives, it must prove what it pled. The State is free to turn a retaliation charge into a more specific charge of retaliation against a witness, just as it is free to turn a theft charge into a more specific charge of theft by deception, but doing so has consequences.[30]

If the law were as the State argues, and it did not need to prove "unnecessary definitions" that it pled, it would allow for convictions where the evidence did not remotely resemble the allegations. An indictment that approximates the old offense of embezzlement will be different from an indictment that approximates the old offense of extortion only insofar as they use different definitions for terms in the basic theft statute. It would surely deny due process to allow the State to disregard the definitions contained in either of those indictments and win a conviction when the evidence showed that the defendant snatched a purse.

### III. Conclusion

When the State unnecessarily pleads a statutory definition that narrows the manner and

---

[30] *See Thomas v. State*, 753 S.W.2d 688, 692 (Tex. Cr. App. 1986) (where State pled that appropriation was without the owner's effective consent because "no assent in fact was given by the owner," State was obliged to prove as much, and evidence that there was consent that was obtained by deception would not support a conviction).

means in which an offense may be committed, that definition is "the law as authorized by the indictment" and thus the allegation must be proved beyond a reasonable doubt. Because here the State unnecessarily pled that the theft was by deception but provided no proof of deception, the evidence was insufficient to support a conviction. We affirm the Court of Appeals's decision to acquit the appellant.

Delivered October 5, 2011.
Publish.