

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00434-CR
_____

DANIEL RAY GARCIA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court No. B19425-1303, Honorable Edward Lee Self, Presiding

September 24, 2014

MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Daniel Ray Garcia, was indicted for the offense of theft.[1] A jury convicted appellant of the indicted offense and sentenced him to nine months in a State Jail Facility (SJF) and assessed a fine of $5,500. Appellant has perfected his appeal and contends that (1) the evidence was insufficient to support the jury's verdict, and (2) the trial court committed reversible error in allowing evidence of an extraneous offense. Disagreeing with appellant's contentions, we will affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A). (West Supp. 2014).

Factual and Procedural Background

The events leading to appellant's indictment involve appellant's purchase of parts and labor for two semi-trucks from Tony Wilkins, doing business as WesTex Enterprises in Plainview, Texas.[2]  The first purchase occurred October 26, 2012, and was for a total of $2,237.57.  This purchase was for a "wet kit," which was described as a part of the power take off (PTO) assembly on the semi-truck that allowed the driver to unload the load being carried by the truck.  In payment, appellant issued a check to WesTex for the total amount of the purchase.  The testimony at trial reveals that the check was a "hold check," meaning WesTex was to hold the check for 30 days.  This agreement was written on the invoice issued at the time of the transaction.  During the trial, there was disagreement as to when appellant was to have paid the amount of the invoice.  However, after the 30 day agreement had passed on December 12, 2012, Wilkins caused the check to be deposited in his bank and it was returned "Non Sufficient Funds."

Prior to the time the first check was deposited, on November 9, 2012, appellant returned to WesTex to acquire a second PTO unit for a different truck.  The total amount of this transaction was $3,227.50.  Appellant testified that Wilkins agreed to again hold his check; however, Wilkins testified there was no agreement to hold the second check.  As opposed to the first invoice, the invoice for the second transaction contains no notation that the check was to be held for any period of time prior to presentment for payment.  The check was deposited for collection and, on November 16, 2012, Wilkins was notified that there were not sufficient funds in the account to cover the amount of

_____

[2] The offenses were aggregated pursuant to TEX. PENAL CODE ANN. § 31.09 (West 2011).

2

the second check. Wilkins testified that he attempted to contact appellant in an effort to collect the funds owed on the second check. However, no payments were ever made and, at trial, appellant testified that he had not paid anything on either check.

On January 3, 2013, Wilkins had a demand letter sent to appellant demanding payment for both checks within ten days. Sometime in January, Wilkins spoke to appellant, who agreed to make payments of $500 per week on the checks. However, no payments were ever made to Wilkins. The checks were eventually forwarded to the District Attorney's office of Hale County for collection. A notice letter was sent by the District Attorney's office to appellant at 1108 14th Street, Seagraves, Texas 79359. This address was different from the address shown on the checks: P.O. Box 1192, Seagraves, Texas 79359. The notice letter sent to appellant by the District Attorney's office required payment by February 19, 2013, or the matter would be presented to a grand jury for consideration of an indictment. No payments were made and subsequently the instant indictment was returned against appellant.

The indictment presented by the grand jury is for theft, "pursuant to one scheme or course of conduct." The total amount alleged in the indictment is for merchandise of a value of $1,500 or more but less than $20,000.

During the State's presentation of evidence in their case-in-chief, Wilkins testified about the events that resulted in accepting both checks. As noted earlier, Wilkins acknowledged that he agreed to hold the first check for 30 days before he would deposit it for payment. When the first check was deposited, it was dated December 13, 2012. Wilkins agreed that when the check was initially given to him, it did not have a date on

it. Wilkins testified that he had no recollection of putting the date on the check before it was deposited; yet, from the record, it is clear that Wilkins or a member of his office staff must have dated the check.

In regard to the second transaction, Wilkins was adamant that there was no agreement to hold the check. His testimony was that he informed appellant that he had to be paid and appellant told him that the check was "good to go." Further, Wilkins stated that, had there been any agreement regarding the second check, the agreement would have been noted on the invoice. The invoice was introduced in evidence and contained no notation that the check was to be held or that there was any agreement regarding the check.

At the conclusion of Wilkins's testimony, the State called Stacy Potter, the chief operating officer for First United Bank, the bank where appellant had his checking account. Appellant objected to the State's calling Potter as a witness because she was not listed on the witness list provided by the State. After hearing arguments about the matter, the trial court sustained the objection. Following the trial court's ruling, the State rested its case-in-chief.

Appellant then moved for an instructed verdict. The trial court denied the motion for instructed verdict and appellant proceeded to introduce testimony.

Appellant then testified in his own defense. Appellant maintained throughout that he intended to pay for the parts and labor involved in both transactions. As to the first check, appellant testified that he asked for time to get the money together for the first "wet kit." Further, appellant contends that there was no mention of holding the check for

4

only 30 days, and that he did not see the notation on the bottom of the first invoice that indicated the 30 day limit. Appellant's testimony was that Wilkins would hold the check until appellant started working and was able to make some money to pay for the parts. Further, appellant agreed that he still owed Wilkins the money and had not made any payments toward the amount owed on the first check.

In regards to the second transaction, appellant testified that he told Wilkins he had only hauled one load and did not have the money. According to appellant's testimony, Wilkins agreed that he would hold the check and appellant could take care of it and the first check when he got on his feet. At that time, appellant would clear up both checks.

Appellant further testified that he did not find out that both checks had been returned for insufficient funds until sometime in early January 2013. According to appellant's testimony, he never received the letter from the District Attorney's office advising him that both checks had been turned over to the District Attorney's office for collection or prosecution. In his testimony, appellant stated he found out about both checks being returned for insufficient funds when Wilkins called him in early January 2013. At that time, he offered to pay $500 per week on the checks until they were paid. Appellant testified that he owed the money to Wilkins and that he had no intent to defraud Wilkins or pass him any bad checks when he presented the two checks to Wilkins.

During cross-examination, appellant admitted that his mailing address in Seagraves was P.O. Box 1192, and that he regularly got mail at that address. Further,

5

he testified that he checked the mail box on a routine basis. However, appellant denied recalling that he received statements from his bank at that address. Specifically, appellant denied receiving a notice in the middle of September that his account was overdrawn. When asked if he was aware that the bank account in question had been overdrawn continuously since September 9, 2012, appellant averred he was unaware of that fact.

Later, during further cross-examination of appellant, the State asked about his previous conviction for theft of service by check. In that examination, the State introduced State's exhibit 6, a certified copy of a May 28, 2009 judgment revoking community supervision for the offense of theft of service by check and sentencing appellant to six months in the Gaines County Jail. Appellant's trial counsel objected to the exhibit on the basis of Texas Penal Code section 31.03(c)(1), and that the prior offense in question was not a recent transaction and, therefore, not relevant to the trial. *See* TEX. PENAL CODE ANN. § 31.03(c)(1).[3] The trial court overruled the objection.

Appellant then recalled Wilkins for further testimony. Wilkins testified that he would consider it rare to hold a check or accept a post-dated check in payment for parts and labor. When questioned about his affidavit to the District Attorney's office, that the check was presented to the bank within 30 days after receipt, Wilkins testified that it was presented within 30 days after appellant had agreed to pay the check. Upon reexamination by the State, Wilkins testified that any time he agrees to hold a check there is a notation on the invoice, as shown on State's exhibit 3, the first invoice. After the State concluded its reexamination of Wilkins, appellant rested his case.

---

[3] Further reference to the Texas Penal Code shall be by reference to "§ ____" or "section ____."

The State then called Stacy Potter, chief operations officer at First United Bank, as a rebuttal witness. Appellant objected that Potter had not been listed as a witness in discovery. The trial court overruled the objection, noting that Potter was being called as a rebuttal witness.

Potter testified that, as the chief operating officer for the bank, she was custodian of the records. She identified S-1 and S-2, the checks at issue, as checks written on the account of appellant. Potter testified that the address for the account those checks were written on was P.O. Box 1192, Seagraves, Texas, and that all notices regarding the account status were mailed to that address. Further, Potter said that when an account goes into overdraft, the accountholder is notified via mail. A review of the appellant's account history showed that the account was in continual overdraft status since September 5, 2012. The bank mailed four notices of overdraft status to the account holder at the address indicated plus the account's overdrawn status was noted on bank statements that were generated during that time period. According to Potter, the account was finally charged off on October 23, 2012.

The State and appellant then closed the presentation of evidence. The trial court presented a proposed court's charge to counsel for each side. The State and appellant voiced no objections to the trial court's charge to the jury. Accordingly, the jury was read the charge and final arguments were given. Subsequently, the jury found appellant guilty of the charge and, after hearing punishment evidence, assessed his punishment at confinement in an SJF for nine months and a fine of $5,500.

7

Appellant has perfected his appeal and presents three issues for consideration. By his first issue, appellant contends that the trial court erred in overruling his motion for an instructed verdict. In his second issue, appellant contends that the evidence was insufficient to support the jury's verdict. In his third issue, appellant contends that the trial court erred in admitting the evidence of the prior extraneous act. We will consider appellant's first and second issue together.

Instructed Verdict and Sufficiency of the Evidence

At the close of the State's case-in-chief, appellant moved for an instructed verdict. The trial court denied the motion. Appellant contends that the trial court's denial was error. Appellant's contention does not take into consideration the rule that a motion for instructed verdict is actually a challenge to the sufficiency of the evidence. *See Cook v. State,* 858 S.W.2d 467, 470 (Tex. Crim. App. 1993). Accordingly, we will proceed to consider all of the evidence in connection with appellant's challenge to the sufficiency of the evidence.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a

conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

As an appellate court we conduct our sufficiency review pursuant to a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would accurately set forth the law, as authorized by the indictment, but neither unnecessarily increases the State's burden of proof nor unnecessarily restricts the State's theories of liability, yet adequately describes the particular offense for which the defendant was tried. *See id.*

A hypothetically correct charge requires the State to prove that 1) appellant, 2) pursuant to one scheme or course of conduct, 3) unlawfully appropriated, 4) merchandise of the value of $1,500 or more but less than $20,000, 5) from Tony Wilkens, the owner, 6) without the effective consent of the owner, 7) by issuing or passing checks when he did not have sufficient funds on deposit for payment.

9

<u>Analysis</u>

Appellant contends that, because the first check was a post-dated check, the transaction was an extension of credit and, therefore, the appropriation of the property was not unlawful. Appellant's contention is grounded in the fact that Wilkins agreed to hold the first check for 30 days. Accordingly, the act of holding the check is an act of extending credit and, therefore, there can be no unlawful appropriation of Wilkins's property. Appellant then concludes that because the indictment alleged theft pursuant to one scheme or course of conduct but proved only one check, the proof was insufficient. *See Geick v. State*, 349 S.W.3d 542, 548 (Tex. Crim. App. 2011).

The State counters that, while the check was post-dated, appellant knew he had been overdrawn for an extended period of time and the entire episode was the perpetration of deception on the owner. We need not rely upon the State's theory for the reasons stated below.

For purposes of argument, we will accept appellant's proposition that the first check was simply an extension of a form of credit that will not support a theft conviction. However, even accepting that proposition, it does not change the outcome of this matter.

We do not agree with appellant's contention regarding the application of *Geick*. *Geick* involved an indictment for theft that alleged that the appellant had appropriated the property of the owner by deception. *Id.* at 543. There was no proof offered during the trial as to how the appellant had acquired the bulldozer in question. When the case was submitted to the jury, the application paragraph of the jury charge did not limit the

10

conviction to the offense of theft by deception. *Id.* at 544. After reviewing the number of different ways to commit the offense of theft, the Court of Criminal Appeals noted that, in *Geick,* the State needlessly pleaded a more specific manner of commission of the offense. *Id.* at 547. This then became the law as authorized by the indictment and, accordingly, the law the State must prove. *Id.* at 548. Because there was no evidence of deception, the State's proof was insufficient. *Id.*

We are not faced with the same conundrum that was present in *Geick.* The manner and means alleged to commit the theft in question was "by issuing or passing checks, when the defendant did not have sufficient funds in or on deposit" with the bank. The indictment alleges a continuing scheme or course of conduct regarding theft by issuance of an insufficient check. We, accordingly, have only one manner and means of commission of the offense of theft. Instead, we have an aggregate amount alleged to have been stolen of $1,500 or more but less than $20,000. The record before this Court indicates that one check, S-1, was for $2,237.57, and that the second check, S-2, was for $3,227.50. Thus, the total of the two checks was within the amount alleged as stolen in the indictment; and, more importantly, both checks individually are within the range.

As the Court of Criminal Appeals stated in *Lehman v. State,* 792 S.W.2d 82, 84 (Tex. Crim. App. 1990), "once the defendant has been given proper notice that he must prepare to defend himself against a charge that he has stolen a certain 'bundle' of property, there is no reason that he should be acquitted if the evidence shows him guilty of stealing enough of the 'bundle' to make him guilty of the offense charged." The purpose of the aggregation statute is to allow multiple thefts committed pursuant to a

common scheme or continuing course of conduct to be considered together to determine the grade of the offense. *See* § 31.09; *De La Fuente v. State,* 264 S.W.3d 302, 318 (Tex. App.—San Antonio 2008, pet. ref'd) (mem. op.). When the allegation is theft of an aggregated amount pursuant to one scheme or continuing course of conduct, the State need not prove theft of each individual item appropriated. *See De La Fuente,* 264 S.W.3d at 318 (citing *Lehman,* 792 S.W.2d at 84). The evidence is sufficient if the State shows illegal appropriation of property sufficient to meet the aggregate value alleged. *See id.* at 319. We, therefore, conclude that the evidence is sufficient to support the jury's verdict. Appellant's first two issues are overruled.

Extraneous Offense

Appellant's final issue contends that the trial court committed reversible error when it admitted proof that he had been previously convicted for the offense of theft by check during the guilt-innocence stage of the proceeding. We disagree for the reasons set forth below.

Prior to addressing appellant's contentions regarding the propriety of the trial court allowing proof of appellant's prior conviction to come before the jury during the guilt-innocence stage of the proceeding, we must address the State's contention that this issue has not been properly preserved for appeal. To address this issue, we turn to the record of the trial.

The record reflects that when the State first broached the subject of appellant's prior conviction for theft by check, trial counsel made the following objections to introduction of the conviction:

> Your Honor, first of all, I would object for two reasons, the first one being that the State, I do not believe, adequately provided me notice of this offense in violation of my motion in limine which was granted by the Court. Secondly, Your Honor, I believe that this information is so far remote in the past that it has no relevance or bearing on the current situation.

The trial court overruled the objections and the State again began questioning appellant. After a few questions, the State offered S-6, a certified copy of a judgment from the 106th District Court of Gaines County, Texas. Whereupon, appellant's trial counsel again urged his objection in the following language:

> I am going to renew my objection under Penal Code 31.03(c)(1) in that, again, this evidence is not a recent transaction and therefore it's not relevant to these proceedings.

The trial court then overruled the objection. The Texas Penal Code section referred to by trial counsel provides as follows:

> (c) For purposes of subsection (b):
>
> > (1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty;

§ 31.03(c)(1).

Appellant's issue before this Court is couched in terms of Rule 404(b) of the Texas Rules of Evidence. *See* TEX. R. EVID. 404(b).[4] In reading appellant's brief, it is clear that the argument put forth is that, as to the extraneous evidence offered by the State, its relevancy value was small when compared to the inflammatory or prejudicial

---

[4] Further reference to the Texas Rules of Evidence shall be by reference to "Rule __."

13

potential. Appellant's trial objection was not a Rule 404(b) objection. It was a specific objection under the Texas Penal Code.

It is well settled that to preserve an issue for appeal, there must be a timely and specific objection to the evidence. *See* TEX. R. APP. P. 33.1(a)(1)(A). Further, the complaint on appeal must comport with the objection made at trial. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014). In that connection, an objection pursuant to one legal theory will not support an issue on a different legal theory on appeal. *Fabela v. State,* 431 S.W.3d 190, 195 (Tex. App.—Amarillo 2014, pet. dism'd) (citing *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (en banc)).

The issue presented as appellant's third issue was not properly preserved for appeal. The trial court never had the opportunity to address any of appellant's concerns regarding Rule 404(b). Instead, the objection relied upon section 31.03(c)(1) for the proposition that the extraneous offense was too remote. Accordingly, nothing has been preserved for our consideration. TEX. R. APP. P. 33.1(a)(1)(A). Appellant's third issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Do not publish.

14