

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0325-20

---

### DUKE EDWARD, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### GALVESTON COUNTY

---

SLAUGHTER, J., delivered the opinion of the Court in which KELLER, P.J., HERVEY, RICHARDSON, YEARY, NEWELL, KEEL, and MCCLURE, JJ., joined. WALKER, J., dissented.

## O P I N I O N

Appellant Duke Edward was convicted of felony assault for beating his girlfriend. *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2)(A). The offense was elevated to a third-degree felony based in part on the existence of a "dating relationship" between Appellant and the

victim. *Id.*; *see also* TEX. FAM. CODE § 71.0021(b) (providing applicable statutory definition for "dating relationship"). [1] On appeal, the Fourteenth Court of Appeals reversed Appellant's conviction, finding the evidence insufficient to meet the statutory requirements under Family Code Section 71.0021(b) for establishing a dating relationship. We granted the State's petition for discretionary review to answer the following question: Did the court of appeals err in holding that evidence of a dating relationship was insufficient where the State presented evidence that the victim referred to Appellant as her "boyfriend" when speaking to law enforcement immediately after the assault, as well as other circumstantial evidence suggesting the existence of an intimate relationship? Yes, it erred. Therefore, we reverse the court of appeals' judgment and affirm the trial court's judgment of conviction.

## I.     Background

Maggie Bolden called 911 to report a disturbance at her apartment. La Marque police officer Richard Hernandez responded and knocked on Bolden's door. Crying and "in a bit of a state of hysteria," she opened the door. Officer Hernandez observed blood on Bolden's shirt and face. When he asked her what was going on, Bolden stated that

---

[1] The relevant statutory language reads as follows:

> (b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:
>> (1) the length of the relationship;
>> (2) the nature of the relationship; and
>> (3) the frequency and type of interaction between the persons involved in the relationship.
> (c) A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a "dating relationship" under Subsection (b).

TEX. FAM. CODE § 71.0021.

Appellant had hit her and was inside the apartment in the bedroom. Hernandez then told Bolden to walk down the hallway and sit down. From the doorway of the apartment, Officer Hernandez called for Appellant to come out and speak with him. After receiving no response, Hernandez entered the apartment and found Appellant in the bedroom sitting on a bed. Hernandez arrested Appellant and put him in the back of his patrol car. EMS eventually arrived on the scene to treat Bolden. Officer Hernandez later took photographs of Bolden's injuries, asked her some questions, and gave her a family-violence form, which she completed and signed.[2] Appellant was subsequently charged with the third-degree felony offense of assault causing bodily injury to a person with whom he was in a dating relationship, second offense. *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2)(A) (providing in relevant part that assault causing bodily injury is elevated to a third-degree felony if: (1) the offense is committed against a person with whom the defendant has a "dating relationship," as that term is defined by Family Code Section 71.0021(b), and (2) the defendant has a prior conviction for certain types of dating-violence or family-violence offenses).

## A. Evidence at trial

By the time of Appellant's jury trial, the State was unable to locate Bolden. Thus, she did not testify. Instead, the State relied on the testimony of Officer Hernandez and

---

[2] Officer Hernandez testified that Bolden completed and signed the family-violence form, but the form was not admitted into evidence at trial. Although defense counsel objected to any discussion of the conversation that led to Officer Hernandez giving Bolden the form on the basis of hearsay, trial counsel did not object to Hernandez's testimony that Bolden completed and signed the form.

another first responder dispatched to the scene following the 911 call,[3] as well as a portion of Officer Hernandez's body-camera footage and the EMS report.

### 1. Officer Hernandez's testimony and body-camera footage

In his testimony on direct examination, Officer Hernandez stated that when he arrived on the scene and initially made contact with Bolden, she referred to Appellant as her "boyfriend" and identified Appellant as the person who hit her. Officer Hernandez's body-camera video played for the jury, however, was not entirely consistent with this account. The video showed his arrival at Bolden's apartment; his initial conversation with Bolden at the door during which she identified Appellant by name and said Appellant beat her up; his entry into the apartment and arrest of Appellant; his placing of Appellant in the squad car; and his return to the apartment where Bolden was then being treated by EMS, at which point he states he is going to take photographs of her injuries and "ask her a couple of questions." The excerpt of the body-camera footage then ends. Thus, the portion of the video played at trial did not capture Bolden referring to Appellant as her boyfriend.

On cross-examination, defense counsel focused on this apparent inconsistency between Officer Hernandez's testimony and the events depicted on the body-cam video. The following exchange occurred:

> Q: And taking you back to when you first made contact, we saw a portion of your body cam video; and as Ms. Bolden came out of her residence, she immediately began speaking with you?
>
> A: Correct.
>
> Q: And she referred to this person, she identified this person hitting her, correct?

---

[3] The 911 call was also admitted into evidence but contains no evidence relevant to the existence of a dating relationship between Appellant and Bolden.

A:     Correct.

Q:     But as we saw in your video cam—and at that particular stage when she first made contact with you—she didn't identify Mr. Duke Edward as her boyfriend, correct?

A:     At some point during our contact—

Q:     Answer my specific question: At that time—

A:     No.

Q:     —she didn't say that at that particular time when you first made contact with her?

A:     Upon initial contact, no.

Q:     That's my question. She didn't say that, correct?

A:     Correct.

. . .

Q:     And, again, I'm asking a very, very specific question. So please answer the specific question. On the video that we just watched—on that particular video, at no point in time did Ms. Bolden ever state to you that Mr. Duke Edward was her boyfriend; is that correct?

A:     I believe that's incorrect.

Q:     On that specific video that we just saw—I'm not talking about—I'm talking about specifically what we just watched. Did Ms. Bolden ever say on that particular video we just watched that Mr. Duke Edward was her boyfriend?

A:     I believe that's correct.

Q:     Okay. So you're telling us from the portion we just saw, we heard her state, "That's my boyfriend, Duke Edward"?

A:     I believe that's incorrect.

Q:     You believe that's incorrect she said that?

A:     I believe it's incorrect. She didn't identify him as her boyfriend.

Despite this apparent impeachment, Officer Hernandez clarified on re-direct that the body-camera footage did not capture his entire interaction with Bolden and that some of the footage had been "taken out."[4]

---

[4] Although it is not entirely clear from the record, it appears that the rest of the video was redacted per agreement by the State and defense. Also, as was discussed outside the presence of the jury,

### 2.    EMT Black's testimony

Following Officer Hernandez's testimony, the State called Amanda Black, a La Marque EMT who treated Bolden after the incident. On direct examination, Black described Bolden's injuries and indicated that Bolden "stated her boyfriend beat her up." In support of Black's testimony, the State moved to admit into evidence the EMS incident report. The unredacted report contained a reference to Appellant as Bolden's "boyfriend."

Defense counsel then took EMT Black on *voir dire* outside the presence of the jury to address the admissibility of the information in the report. On *voir dire*, Black admitted that her partner wrote the report and that Officer Hernandez had provided EMS personnel with the information about the dating relationship between Appellant and Bolden. Black qualified her statement, however, by indicating that Bolden could have also provided this information to her partner while EMS was transporting Bolden to the hospital. Ultimately, Black could not recall whether Bolden ever directly conveyed to EMS personnel that she was in a dating relationship with Appellant. She acknowledged that her testimony about the existence of such a relationship was based solely on the report and not on her personal recollection. The trial court ultimately admitted the report but ordered that any references to a dating relationship between Appellant and Bolden be redacted on the basis of hearsay.

After the trial court's ruling, during the defense's cross-examination of Black in front of the jury, the following exchange occurred regarding Black's knowledge of Appellant's and Bolden's relationship:

---

some portions of the audio were omitted from the video excerpt played for the jury, including references to Appellant's possible intoxication and that Appellant was Bolden's "boyfriend or husband."

Q: And you, yourself, have no firsthand knowledge of the relationship— at least you didn't have it at the time of [Appellant] or Ms. Bolden at the time?

A: Firsthand, her telling me?

Q: Yes, ma'am.

A: No, she didn't tell me.

Q: So any information regarding the relationship between Ms. Bolden and [Appellant] you received from someone else, correct?

A: Correct.

Q: And you have no way to verify if the information that you received regarding the relationship is true or correct; is that correct?

A: I'm sorry? Say it again.

Q: You have no way of verifying the information you received at the scene as true and correct?

A: No. As far as the relationship, no.

### 3. Directed verdict denied; Appellant convicted and sentenced

After Black's testimony, the State and defense rested. Defense counsel moved for a directed verdict, arguing that there was insufficient evidence for the jury to rationally conclude that a dating relationship existed between Appellant and Bolden. The trial court denied the motion. The jury returned a guilty verdict, and after Appellant pleaded true to two enhancement paragraphs, the jury sentenced him to 60 years in prison.

### B. Court of Appeals' opinion

On direct appeal, Appellant again urged that the evidence could not rationally support a finding that he and Bolden were in a "dating relationship" under the definition in Family Code Section 71.0021(b). In a plurality opinion,[5] the Fourteenth Court of Appeals agreed and held the evidence was insufficient on this basis. *Edward v. State*, 599 S.W.3d

---

[5] Of the three-judge panel, Justice Zimmerer announced the Court's judgment; Justice Bourliot concurred without opinion; and Justice Christopher dissented.

69, 76 (Tex. App.—Houston [14th Dist.] 2020). In reaching its conclusion, the court of appeals rejected the State's argument that the jury could have relied on Officer Hernandez's and EMT Black's testimony stating that Bolden referred to Appellant as her boyfriend. *Id*. The court reasoned that the jury was "not permitted to disregard Officer Hernandez's later testimony [that he gave] after viewing the body-camera video . . . [in which he admitted] that the complainant did not identify appellant as her boyfriend[.]" *Id.* Nor was the jury permitted to disregard Black's "admission during cross-examination that the complainant did not tell her that appellant was her boyfriend." *Id*. The court also noted that Bolden never referred to Appellant as her boyfriend during the portion of the body-camera video that had been played for the jury. *Id*. With respect to the State's alternative argument that other circumstantial evidence could support a finding of a dating relationship—i.e., that Appellant was found in Bolden's bedroom[6] and that the two were alone in her apartment—the court of appeals also rejected that argument, reasoning that "based on this evidence, a factfinder could do no more than speculate on the existence of a dating relationship[.]" *Id.* While the court found the evidence insufficient to support the existence of a dating relationship, it held that the evidence was nevertheless sufficient to support all other elements of assault, such that reformation of the judgment, rather than acquittal, was the proper remedy. *Id.* at 77. Therefore, the court reversed Appellant's conviction for third-degree felony assault and remanded the case with instructions for the trial court to reform

---

[6] Although both parties' briefs refer to Appellant being found in the complainant's bedroom, Officer Hernandez's testimony in the record only refers to where Appellant was found as "a back bedroom." It is unclear from the record whether Bolden's apartment had more than one bedroom.

the judgment to reflect a conviction for the lesser-included offense of misdemeanor assault and to hold a new punishment hearing. *Id.*

Justice Christopher dissented, opining that the record contained "ample evidence of a dating relationship" between Appellant and Bolden. *Id.* at 78. In support, she cited the evidence that had been discounted by the plurality, namely, the testimony from EMT Black and Officer Hernandez stating that Bolden referred to Appellant as her boyfriend, as well as the circumstantial evidence showing that Appellant was found in Bolden's bedroom. *Id.* She also noted that Officer Hernandez had provided Bolden with the family-violence form, which "supports a logical inference that [the victim] informed the officer that she and appellant were involved in a dating relationship." *Id.* Regarding the plurality's disregard of Officer Hernandez's testimony based on the contents of the body-cam video, Justice Christopher noted that the plurality's analysis "fails to recognize that the body cam video did not capture the entire interaction" between Officer Hernandez and Bolden. *Id.* Because the video ended while Hernandez was still in Bolden's apartment documenting her injuries, Justice Christopher reasoned that "the jury could have reasonably concluded that the complainant identified appellant as her boyfriend after the body cam had stopped recording." *Id.* at 79. Similarly, with respect to the plurality's disregard of EMT Black's testimony, Justice Christopher noted that such reasoning "flies in the face of our standard of review, which provides that when there is a conflict in the evidence, we must presume that the jury resolved the conflict in favor of the verdict." *Id.* (citing *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998)). Thus, Justice Christopher would have affirmed Appellant's conviction for felony assault.

## II.     Analysis

Agreeing in large part with Justice Christopher's dissenting opinion, we reject the court of appeals' conclusion that the evidence was insufficient to support the jury's finding of a dating relationship between Appellant and Bolden. Viewing the evidence in a light most favorable to the verdict, and applying the plain language of Texas Family Code Section 71.0021(b), we find that the jury could have rationally inferred that Appellant and Bolden had "a continuing relationship of a romantic or intimate nature" based on Officer Hernandez's testimony that Bolden identified Appellant as her "boyfriend" and the remaining circumstantial evidence. *See* TEX. FAM. CODE § 71.0021(b). By disregarding the evidence supporting the jury's verdict, the court of appeals deviated from the appropriate standard of review that permits the jury to draw reasonable inferences from the evidence and evaluate the witnesses' credibility. Affording a proper level of deference to the jury's verdict here, we conclude that its finding of a dating relationship between Appellant and Bolden was not irrational or based upon impermissible speculation.

### A.     Sufficiency-of-the-evidence standard of review

When reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict. *Marshall v. State*, 479 S.W.3d 840, 845 (Tex. Crim. App. 2016). The verdict will be upheld if any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw

reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. The jury is the sole judge of the weight and credibility of the evidence. *Id.* When considering a claim of evidentiary insufficiency, we must keep in mind that a juror may choose to believe or disbelieve all, some, or none of the evidence presented. *See Jones*, 984 S.W.2d at 257 ("The trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side."). Further, while jurors may not base their decision on mere speculation or unsupported inferences, they may draw reasonable inferences from the evidence. *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). The evidence is sufficient to support a conviction, and thus the jury's verdict is not irrational, if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination. *Temple v. State,* 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

**B.      Applicable statutory law**

We measure the sufficiency of the evidence against the hypothetically-correct jury charge, defined by the statutory elements as modified by the charging instrument. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018).  Here, Appellant was charged with felony assault causing bodily injury, which was elevated from a Class A misdemeanor to a third-degree felony based on the existence of a "dating relationship" with the victim and a prior

conviction for dating-violence assault. TEX. PENAL CODE § 22.01(a)(1), (b)(2)(A). Section 22.01(b)(2) provides that a person commits a third-degree felony if he: (1) commits bodily injury assault against "a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code"—i.e., a person with whom the defendant has a "dating relationship," a family member, or a member of the defendant's household; and (2) the prosecution proves that the defendant has a previous conviction for one of several enumerated types of offenses, including assaultive offenses, against a person with whom the defendant has a dating relationship, a family member, or a member of the defendant's household. *Id*. § 22.01(b)(2)(A). Appellant does not contest the sufficiency of the evidence showing that he assaulted Bolden or that he has a prior conviction for assault of a person with whom he was in a dating relationship; rather, his sole complaint is that the evidence was insufficient to show he was in a "dating relationship" with Bolden. Thus, we consider only that statutory element going forward.

In defining the offense, Penal Code Section 22.01(b)(2) expressly incorporates the definition of "dating relationship" found in Family Code Section 71.0021(b). *Id*. § 22.01(b)(2). Because the statute expressly incorporates this definition and it constitutes an element of the offense, it is part of the hypothetically-correct jury charge against which the sufficiency of the evidence must be measured. *Ramjattansingh*, 548 S.W.3d at 546-47 (explaining that statutory allegations are always part of the hypothetically-correct jury charge); *see also Geick v. State*, 349 S.W.3d 542, 547-48 (Tex. Crim. App. 2011) (stating that when pled, a statutory definition becomes an element of the offense which must be proven beyond a reasonable doubt). Section 71.0021(b) states:

(b) For purposes of this title, "dating relationship" means a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on consideration of:

    (1)    the length of the relationship;

    (2)    the nature of the relationship; and

    (3)    the frequency and type of interaction between the persons involved in the relationship.

TEX. FAM. CODE § 71.0021(b). Subsection (c) additionally provides that "[a] casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a 'dating relationship' under Subsection (b)." *Id*. § 71.0021(c).[7]

Having set forth the relevant statutory requirements, we now turn to an analysis of the evidence in this case to determine whether it meets the statutory definition for establishing a "dating relationship."

## C. Evidence was sufficient to support finding "dating relationship" between Appellant and victim.

We, like Justice Christopher, conclude that the jury could have rationally found beyond a reasonable doubt that the requirements of Family Code Section 71.0021(b) were satisfied here. At the outset, contrary to the court of appeals' suggestion, it was not irrational for the jury to credit Officer Hernandez's testimony regarding Bolden's description of Appellant as her "boyfriend." While Officer Hernandez clarified on cross-examination that Bolden did not make that statement during the admitted portion of his body-camera video, he never wavered from his assertion that she did at some point tell him

---

[7] Although Penal Code Section 22.01(b)(2) does not expressly refer to the provisions in Subsection (c) of Family Code Section 71.0021, we nevertheless include that language here because it directly refines the meaning of the applicable definition in Subsection (b). TEX. PENAL CODE § 22.01(b)(2); TEX. FAMILY CODE § 71.0021(b), (c). Therefore, we conclude that the provisions in Subsection (c) are also part of the hypothetically-correct jury charge here.

Appellant was her boyfriend. Further, the admitted portion of Officer Hernandez's body camera did not capture his entire interaction with Bolden. In fact, the admitted portion of the video ends when Officer Hernandez re-entered the apartment for the purpose of interviewing Bolden. Thus, we find, as Justice Christopher did, that based on these facts, the jury was permitted to draw the reasonable inference that Bolden at some point told Officer Hernandez that Appellant was her boyfriend and that such statement was simply not included in the portion of the video that was played for the jury. To the extent that the court of appeals believed this evidence to be conflicting or lacking in credibility, it was the jury's "responsibility . . . fairly to resolve conflicts in the testimony" and to evaluate Officer Hernandez's credibility with respect to what Bolden told him. *Jackson*, 443 U.S at 319. Accordingly, by disregarding Officer Hernandez's testimony, the lower court deviated from the appropriate standard of review and thus erred.

After resolving that issue, we are still presented with the question of whether the totality of the evidence in the record showed that Appellant and Bolden had "a continuing relationship of a romantic or intimate nature" as is required to establish a dating relationship under the Family Code. *See* TEX. FAM. CODE § 71.0021(b). We observe that the statute instructs that "the existence of such a relationship *shall be determined based on consideration of*: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *Id.* § 71.0021(b)(1)–(3) (emphasis added). While Appellant contends that the record must contain affirmative evidence as to each factor under Section 71.0021(b), we disagree because the statute merely requires that the fact-finder *consider* the listed factors. In other

words, these factors are not standalone elements of the offense which the prosecution must prove beyond a reasonable doubt. Instead, they are guideposts for the jury to weigh in evaluating whether the broader definition in Subsection (b)—a "continuing relationship of a romantic or intimate nature"—is met. Further, Subsection (c) limits the scope of the definition in Subsection (b) by providing that a "casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a dating relationship." *Id.* § 71.0021(c).[8]

Applying these statutory requirements here and viewing the evidence in the light most favorable to the verdict, the dating relationship element was satisfied. First, we take note of the fact that Officer Hernandez testified that Bolden called Appellant her "boyfriend" at some point during their interaction. Common usage of the word by itself implies a continuing relationship of a romantic or intimate nature.[9] Second, there was also

---

[8] *See Childress v. State*, 285 S.W.3d 544, 552 (Tex. App.—Waco 2009) ("[The statute] takes a common-sense approach to describing a dating relationship and distinguishes a dating relationship from casual acquaintances and ordinary fraternizations").

[9] Indeed, the intermediate courts of appeals have routinely held that evidence of a "boyfriend-girlfriend" relationship is sufficient to satisfy the Family Code's definition of a "dating relationship." *See, e.g.*, *Granger v. State*, 584 S.W.3d 571, 575–76 (Tex. App.—San Antonio 2019, no pet.) (finding sufficient evidence that the defendant was at the victim's home "all the time," that the defendant identified the victim as his girlfriend, and that the victim testified that the two had an "on and off" dating relationship); *Oyervidez v. State*, No. 01–17–00007–CR, 2017 WL 6374657, at *2–3 (Tex. App.—Houston [1st Dist.] Dec. 14, 2017, pet. ref'd) (concluding that sufficient evidence supported the verdict because the victim told the 911 operator that her "boyfriend" assaulted her, they had been together for four years, and had been living together for one year); *Herrera v. State*, 526 S.W.3d 800, 810–11 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (affirming conviction based on statements by the appellant that he had asked the victim to be his girlfriend, that he loved her, and that the two had been "dating" for three weeks); *Gaeta v. State*, No. 05-14-01202-CR, 2016 WL 3870665, at *8 (Tex. App.—Dallas July 12, 2016, no pet.) (not designated for publication) (holding that the evidence was sufficient in light of testimony that the appellant and the victim "had a boyfriend/girlfriend relationship" and "had been dating . . . for approximately a year").

circumstantial evidence supporting the "dating relationship" element: (1) Appellant and Bolden had been alone together inside Bolden's apartment and clearly knew each other prior to the incident in question; (2) Appellant was found sitting on Bolden's bed; and (3) Bolden completed and signed the family-violence form that Officer Hernandez gave her.[10] We agree with Justice Christopher that the circumstance of Appellant being found in Bolden's bedroom was one factor that, viewed holistically with the other evidence, would permit the jury to rationally infer that there was an intimate relationship between Appellant and Bolden. *See Edward*, 599 S.W.3d at 78 (Christopher, J., dissenting) ("Because the bedroom is one of the most personal places in the entire home, the jury could have reasonably inferred that the complainant had permitted appellant in her bedroom because their relationship had been ongoing and more than just a casual acquaintance."). Additionally, the fact that Officer Hernandez gave Bolden the family-violence form supported a logical inference that she told him that she and Appellant were in a dating relationship. *Id.* Although this evidence was circumstantial, it is just as probative as direct evidence in establishing Appellant's guilt. *Hooper,* 214 S.W.3d at 13 ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and

---

[10] Even absent evidence of a "boyfriend-girlfriend" relationship, Texas intermediate courts have rejected sufficiency challenges where the evidence suggests a sexual relationship. *See Batiste v. State*, No. 14-17-00837-CR, 2019 WL 1030194, at *3 (Tex. App.—Houston [14th Dist.] Mar. 5, 2019, no pet.) (finding evidence of a dating relationship was sufficient where the defendant and victim had a sexual relationship, despite the appellant's assertion that the relationship was "one-sided" and "casual"); *Gonzalez-Angulo v. State*, No. 01–14–00886–CR, 2016 WL 1470559, at *11 (Tex. App.—Houston [1st Dist.] Apr. 14, 2016) (rejecting sufficiency challenge where the appellant and her partner considered their relationship "just sex" and "at least 95% work and only 5% casual sex" because "[e]ven though the affair might not have been very 'romantic,' especially since [the partner] remained in a relationship with another woman, the jury nonetheless had legally sufficient evidence to rationally conclude that the relationship was . . . intimate").

circumstantial evidence alone can be sufficient to establish guilt."). Thus, the court of appeals further erred by disregarding the circumstantial evidence in support of the jury's verdict.

In sum, considering the cumulative force of all the evidence through the appropriate lens of deference to the jury's verdict, we hold that the evidence was sufficient for the jury to have rationally determined that Appellant and Bolden "have or have had a continuing relationship of a romantic or intimate nature," rather than just a "casual acquaintanceship or ordinary fraternization." TEX. FAM. CODE § 71.0021(b), (c).

### III.    Conclusion

Under Family Code Section 71.0021(b), the evidence is sufficient to establish a dating relationship where it supports a finding that there is or has been "a continuing relationship of a romantic or intimate nature." Here, the evidence showed that: (1) Bolden referred to Appellant as her boyfriend; (2) the two were alone together inside Bolden's apartment; (3) Appellant was found sitting on Bolden's bed; and (4) Bolden completed and signed a family-violence form that had been provided to her by the responding officer. Considered together in a light most favorable to the jury's verdict, this evidence is sufficient for a rational jury to conclude beyond a reasonable doubt that Appellant and Bolden were a dating relationship, and the court of appeals erred in holding otherwise. We therefore reverse the judgment of the court of appeals and affirm the trial court's judgment of conviction.

DELIVERED: December 8, 2021
PUBLISH