

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| HECTOR MARTINEZ, | § | No. 08-13-00363-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC# 20100D00750) |
| | § | |

**O P I N I O N**

Appellant Hector Martinez was convicted of misapplication of fiduciary property and theft of property having a value of more than $200,000 and sentenced to twenty-five years' confinement. On appeal, Appellant contends that the evidence is insufficient to support both convictions, that the trial court erred in charging the jury on theft, and that his counsel rendered ineffective assistance. We affirm.

**BACKGROUND**

Appellant worked as the bookkeeper for Desert Rock Company, Inc., a family-owned landscape stone business. As part of his duties, Appellant was authorized to pay himself, and many of the Desert Rock employees, by electronically transferring the payroll payments from Desert Rock's bank account directly into the employees' bank accounts. About three years after

Appellant became bookkeeper, Desert Rock began to experience financial difficulties. Desert Rock eventually terminated Appellant after its accountant complained of continuing problems in obtaining accounting records from Appellant. Eventually, Desert Rock discovered Appellant had been paying himself not only his regular salary but also had been transferring additional funds from Desert Rock's account directly into his personal checking account. The owners of Desert Rock testified these transactions were not authorized, and that over the years, Appellant had wrongfully transferred $223,795.30 into his personal banking account.

## DISCUSSION

### The Evidence is Sufficient to Support the Conviction for
### Misapplication of Fiduciary Property

In Issue One, Appellant contends the evidence is insufficient to support his conviction for misapplication of fiduciary property. A person commits misapplication of fiduciary property if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary in a manner that involves substantial risk of loss to the owner of the property. TEX. PENAL CODE ANN. § 32.45(b) (West Supp. 2015). "Misapply," as used in this case, means to deal with property contrary to an agreement under which the fiduciary holds the property. *Id.* at § 32.45(a)(2)(A) (West Supp. 2015).

Appellant contends the State failed to present any evidence he entered into an agreement with Desert Rock for the handling of funds and that he acted contrary to that agreement. We conclude there was sufficient evidence of an agreement and that Appellant dealt with the funds contrary to that agreement.

### *Standard of Review*

2

We review sufficiency complaints under the legal sufficiency standard enunciated in *Jackson v. Virginia. Fernandez v. State*, 479 S.W.3d 835, 837 (Tex.Crim.App. 2016); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). We examine the evidence in the light most favorable to the verdict and ask whether any rational fact finder could have found the elements of the charged offense beyond a reasonable doubt. *Fernandez,* 479 S.W.3d 837-38; *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. If a rational fact finder could have so found, we will not disturb the verdict on appeal. *Fernandez*, 479 S.W.3d at 838; *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (upholding conviction where evidence was legally sufficient); *Temple v. State,* 390 S.W.3d 341, 363 (Tex.Crim.App. 2013) (affirming judgment where evidence was legally sufficient to support a conviction).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014); *Carrizales v. State,* 414 S.W.3d 737, 742 (Tex.Crim.App. 2013) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)). The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Dobbs*, 434 S.W.3d at 170; *see Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; s*ee Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *see also Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (observing that it is the fact

3

finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts") (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper,* 214 S.W.3d at 13.

*Analysis*

Appellant does not discuss exactly what he contends the State was required to prove to establish an "agreement" under which he was entrusted with Desert Rock's property. Appellant concedes in his brief there was evidence that he was authorized by Desert Rock to make electronic transfers for payroll purposes. And, Appellant admitted at trial that he made 118 transfers to his personal account in excess of his normal pay. Appellant argues, however, there was no evidence of an agreement between himself and Desert Rock that he would be allowed to make electronic funds transfers for only one specific purpose. Appellant asserts that while evidence of payroll transfers in amounts in excess of those authorized may form the basis for a theft conviction, without evidence of a "specific agreement" that he violated, that evidence is insufficient to support a conviction for misapplication of fiduciary property. We disagree.

The misapplication of fiduciary property statute does not define the term "agreement." *See* TEX. PENAL CODE ANN. §§ 32.01, 32.45 (West 2011 & Supp. 2015); *Bynum v. State,* 767 S.W.2d 769, 777 (Tex.Crim.App. 1989) ("As previously noted, the Legislature did not define 'agreement' within § 32.45."). The courts have consequently interpreted that term under its common definition. *Bynum,* 767 S.W.2d at 777 ("Consequently, we must turn to the common definition."). Accordingly, they have interpreted the term broadly, holding that the agreement

4

under which the fiduciary holds property need not be written, but rather, it must merely be "a harmonious understanding or an arrangement, as between two or more parties, as to a course of action." *Id.* at 777; *see also Anderson v. State*, 322 S.W.3d 401, 406 (Tex.App. – Houston [14th Dist.] 2010, pet. ref'd) ("The agreement need not be written, but must merely be a harmonious understanding as to a course of action."). Nor is there any requirement that the State present testimony from any witness that the parties expressly agreed to the arrangement for handling the property. *Bynum*, 767 S.W.2d at 777 (disagreeing with the appellant that a witness must testify that "we agreed").

Viewing the evidence in this light, we conclude the evidence is sufficient to show Appellant and Desert Rock had a harmonious understanding or arrangement regarding his handling of Desert Rock's money as a fiduciary of that business. The evidence showed, and Appellant acknowledged, that Appellant was hired by Desert Rock to serve as its bookkeeper, and that his duties included performing various functions related to the entry of sales, accounts receivable, accounts payable, payroll processing, online banking, and reconciliation of bank statements and records. Some Desert Rock employees were paid by check and others were paid through direct deposits made electronically to their bank accounts. There was evidence that while Appellant was authorized to prepare payroll checks, he did not have the authority to sign them. Likewise, there was evidence that while Appellant had access to Desert Rock's online banking so that he could directly deposit payroll into the employees' accounts, this authorization was limited as well. Appellant was not authorized to transfer funds other than payroll, and he was not authorized to pay himself funds in excess of his normal authorized pay.

Appellant apparently performed his bookkeeping duties without making excess transfers to

5

his personal account during the initial years of his employment. However, Appellant thereafter began to deposit excess funds, often more than $10,000 per month, from Desert Rock's account into his private banking account. Through the testimony of its witnesses, the State demonstrated that although Appellant was authorized to pay vendors and employees, he was not authorized to pay himself $223,795.30 in excess of his approved pay, nor was he authorized to transfer those excess funds into his personal account. Moreover, there was evidence that once he began transferring excess funds, Appellant attempted to hide the transactions from Desert Rock's owners and accountants, by segregating records in a locked trailer, by refusing to hand over records when requested, and by misrepresenting that vendors had been paid when they had not, all indicating that Appellant was making these transfers to himself in violation of his existing understanding with Desert Rock.

Appellant's explanation that he made the excess payments and transfers at the direction of one of Desert Rock's owners as part of some secret compensation side agreement, does not render the evidence insufficient that an agreement existed limiting his authority.[1] The jury reasonably resolved any conflicting evidence and chose to believe Desert Rock that the excess transfers were unauthorized, a resolution to which we defer. We conclude the evidence was sufficient to show a harmonious understanding existed under which Appellant held Desert Rock's property and that Appellant acted in a manner contrary to that agreement. Issue One is overruled.

**The Evidence is Sufficient to Show Appellant**
**Misapplied or Unlawfully Appropriated**
**Property Valued at $200,000 or more**

---

[1] Appellant asserted that the transactions constituted a part of a "raise." According to Appellant, one of the business owners confided in Appellant alone that the business would soon be excavating a new rock and that Appellant would be included in the profits through the payment of bonus amounts, if he kept this news secret. Appellant testified the owner would periodically provide him a note with the bonus amount written on it and would tell Appellant to pay himself the noted amount, but often would later ask Appellant to refund to him, in cash only, a portion of the bonus.

In Issues Two and Three, Appellant contends the evidence is insufficient to support his convictions for both misapplication of fiduciary property and theft because the State failed to prove that the value of the property misapplied or unlawfully appropriated was $200,000 or more. Appellant contends the State proved at most he misapplied or appropriated $80,700.10, not more than $200,000 as alleged. Appellant claims the evidence is insufficient because: (1) in 11 of 118 transactions, the State failed to deduct his authorized salary from the total unauthorized amount (totaling $8,795.81); (2) in 59 of the transactions, the State failed to include Desert Rock's bank statements to show a deduction from Desert Rock's account (totaling $113,582.97); and (3) in 11 of the transactions, the State failed to include Appellant's bank statements to show he had actually received the money (totaling $20,716.42).

### *The Applicable Law*

The indictment alleged that Appellant, "pursuant to one scheme and continuing course of conduct," misapplied or unlawfully appropriated property with a value of more than $200,000. The value of the property misapplied or unlawfully appropriated is an aggravating element for both misapplication of fiduciary property and theft. *See* TEX. PENAL CODE ANN. §§ 31.03(e), 32.45(c) (West Supp. 2015); *Bowen v. State*, 374 S.W.3d 427, 432 (Tex.Crim.App. 2012) (misapplication of fiduciary property); *Calton v. State*, 176 S.W.3d 231, 235 (Tex.Crim.App. 2005) (theft). When the amounts are alleged to have been obtained "pursuant to one scheme or continuing course of conduct," the conduct is considered as one offense and the amounts are aggregated in determining the grade of the offense. TEX. PENAL CODE ANN. §§ 31.09, 32.03 (West 2011). Under the version of the statutes in force at the time, each offense was a first-degree felony when the aggregated property value was $200,000 or more. *See* TEX. PENAL CODE ANN.

7

former §§ 31.03(e)(7), 32.45(c)(7) (West 2011).[2]

When a defendant is charged with theft in an aggregated amount pursuant to one scheme or continuing course of conduct, the State is not required to prove each individual appropriation. *See Kent v. State*, __S.W.3d__, 2016 WL 735813, at *3 (Tex.Crim.App. Feb. 24, 2016). Rather, evidence of theft is sufficient when the State proves the defendant illegally appropriated enough property to meet the aggregated value alleged. *Id.* Because misapplication of fiduciary property is subject to the same aggregation rules as theft, we conclude this evidentiary standard also applies to misapplication of fiduciary property as well. Accordingly, the issue is whether the State proved, in the aggregate, that Appellant misapplied or unlawfully appropriated property valued over $200,000.

### *Analysis*

Appellant first contends the State did not meet its burden because in 11 of the 118 transactions, the State failed to deduct his authorized salary from the total amount allegedly transferred. Appellant claims the 11 transactions total $8,795.81, and he asserts they occurred on various dates from January 3, 2006 to August 22, 2008. There was evidence, however, from which the jury could conclude that Appellant was given credit for his authorized salary payments and that no such amounts were included in determining the aggregate value of unauthorized transactions.

The State admitted into evidence a summary of the 118 unauthorized transactions totaling

---

[2] In 2015, the legislature amended the monetary values for both misapplication of fiduciary property and theft. The value for first-degree misapplication of fiduciary property was increased from $200,000 or more to $300,000 or more. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 32.45(c)(6), (7), 1993 Tex. Gen. Laws 3586, 3652-53, *amended by* Act of June 20, 2015, 84th Leg., R.S., ch. 1251, § 21, sec. 32.45(c)(6), (7), 2015 Tex. Gen. Laws 4208, 4217 (codified at TEX. PENAL CODE ANN. § 32.45(c)(6), (7)). The value for first-degree felony theft was increased from $200,000 or more to $300,000 or more. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 31.03, 1993 Tex. Gen. Laws 3586, 3638, *amended by* Act of June 20, 2015, 84th Leg., R.S., ch. 1251, § 10, sec. 31.03(e), 2015 Tex. Gen. Laws 4208, 4213 (codified at TEX. PENAL CODE ANN. § 31.03(e)(6), (7)).

$223,795.30, which listed separately by date the total amount Appellant electronically transferred into his account. The summary lists 44 transactions in which unauthorized funds were bundled with Appellant's authorized salary. In each of those 44 transactions, the authorized amount is deducted from the total amount of the transfer, so that only the unauthorized amount is included in the aggregate total of unauthorized funds Appellant received. Thus, in each instance, Appellant's authorized pay, when bundled with unauthorized funds, was first extracted before determining the aggregate value of unauthorized transactions. A Desert Rock representative testified regarding the bundled transfers from Desert Rock's account. For each of the 44 bundled transactions, the witness specifically identified the authorized portion of the transfer, showed that it was deducted from the total, and testified as to the unauthorized amount remaining after the deduction of the amount representing Appellant's salary.

Further, of the 11 transactions in which Appellant asserts he was not given credit for his authorized salary, only 3 were made on dates when unauthorized transfers were alleged to have occurred. The others did not fall within the confines of the claimed illicit transactions. Of these 3, evidence was presented to show that either the authorized portion was deducted from the total unauthorized amount, or that Appellant's salary payments were not bundled with the unauthorized amount.[3]

In sum, the jury could have reasonably concluded from this evidence that Appellant was given proper credit for all comingled authorized funds or that authorized funds were not comingled

---

[3] The first of these 3 occurred on December 15, 2006, when Appellant transferred $2,639.69 to his personal account. His bank statement shows $2,639.69 was deposited into his account. Of this bundled amount, the Desert Rock representative testified Appellant's authorized pay was $439.69, and only the remaining $2,200 constituted an unauthorized transfer. On August 17, 2007, Appellant transferred $1,743.21 into his account. The testimony showed his authorized pay for that day was $345.79, and that amount was shown as a separate credit on his bank statement apart from the unauthorized transfer. On January 11, 2008, $1,985.16 was transferred from Desert Rock's account to Appellant's personal account. The Desert Rock representative testified this transferred amount was not bundled with Appellant's regular authorized pay of $377.14.

9

or considered in determining the aggregate value of the unauthorized transactions.

Appellant also contends that in 59 of the transactions, the State failed to include Desert Rock's bank statements to show a deduction for Desert Rock's account (totaling $113,582.97), and that in 11 of the transactions, the State failed to include Appellant's bank statements to show he had received the money (totaling $20,716.42). Appellant acknowledges that many of the alleged improper transactions were demonstrated to have occurred through bank statements showing a debit from Desert Rock's bank account and a corresponding credit in his bank account. He asserts, however, that for those transactions missing either a bank statement showing a debit from Desert Rock's account or a bank statement showing a credit in his bank account, the evidence is insufficient. In essence, Appellant is arguing that the only proof sufficient to show the value of the property misapplied or unlawfully appropriated would be the respective bank statements showing a deduction from Desert Rock's account and a corresponding deposit in his account. We disagree with Appellant that theft or misapplication could only be shown in the form of bank statements showing a debit to Desert Rock and a corresponding credit to Appellant. We conclude that the illicit transfers could be shown by a combination of various accounting records and testimony, including bank statements.

To prove the aggregate amount, the State submitted into evidence Desert Rock's business, payroll, and banking records, as well as Appellant's banking records. Further, a Desert Rock representative testified regarding each of the 118 unauthorized transactions Appellant performed during his employment, and specifically testified that no one at Desert Rock authorized any of these illicit payments to Appellant. This evidence showed that Appellant's excess, unauthorized transactions to his personal account totaled $223,795.30, with excess transfers of $93,460.28 in

2006, $74,469.28 in 2007, and $55,865.74 in 2008.

In support of this amount, the State presented witness testimony, and voluminous Automated Clearing House (ACH) records, bank statements, and bookkeeping ledgers. This documentary and testimonial evidence showed that funds were electronically transferred from Desert Rock's account to Appellant's account by an automated clearing house (ACH). The debit and credit information showing the unauthorized transfers of Desert Rock funds was provided in the 118 ACH records in evidence, and for some transactions, was additionally shown by Desert Rock's bank statements. Moreover, with few exceptions, Appellant's own bank statements that were admitted into evidence show the corresponding transaction amounts that were deposited into and credited to Appellant's account. The transactions for which Appellant's bank statements are not in evidence are supported by other evidence such as ledger entries and written or processed checks. The jury was capable of examining these exhibits and reasonably and rationally determining that the unauthorized transfers occurred and that the aggregate value of the transferred money exceeded $200,000.

We also disagree with Appellant that the ACH records fail to show an actual transfer to his account but only show that ACH fund transfers to him were "scheduled." Initially, we note that with only two exceptions, each wrongful debit transaction from Desert Rock's account was supported by Appellant's banking records which showed the corresponding and matching credit to his personal banking account.[4] In any event, the ACH records identify Desert Rock as the

---

[4] The State did not produce Appellant's bank statements for transactions 90 and 91. In transaction 90, the ACH record shows two transfers made from Desert Rock's account totaling $2,674.51. Desert Rock's bank statement also shows that a debit was made to the business banking account in that same amount. A corresponding transfer of $1,979.35 was made to Appellant's bank account, and $695.16 was transferred to another employee. Appellant had registered the transaction as a payment to Advanta Bank Corp. and had categorized the amount as relating to "travel." The testimony showed that Desert Rock never found any check made payable to Advanta Bank Corp. For transaction 91, the ACH record shows an electronic transfer of $1,985.16 from Desert Rock to recipient Hector Martinez, and

11

originator of the transfer, describe the transaction as payroll for Appellant, identify the routing and account numbers for the account belonging to Desert Rock and Appellant, show a credit to Appellant as a recipient of the specified funds, and identify a corresponding debit to Desert Rock for the same specified sum.   Each ACH record contains a unique confirmation number for the transaction showing that the transfer between the accounts had occurred, and identify Appellant as the recipient of the electronic funds.   This was sufficient evidence to show the funds at issue were electronically transferred to Appellant's account.

Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have reasonably determined that the value of the misapplied and unlawfully appropriated property was more than $200,000.   Consequently, the evidence is sufficient to show that Appellant, without authority, transferred funds totally over $200,000 in the aggregate from Desert Rock's account into his personal account, and thereby establishes the offenses of first-degree felony theft and misapplication of fiduciary property.   Issues Two and Three are overruled.

### The Trial Court Properly Submitted "Effective Consent" in the Jury Charge

In Issue Four, Appellant contends the trial court erred when it denied his request to include an instruction on "effective consent" in the application paragraph of the theft count.   Appellant recognizes that "effective consent" was provided in the definitional portion of the charge, but asserts that "effective consent" is both an essential element of theft as well as one his defensive theories, requiring its placement in the application paragraph.

We disagree and conclude "effective consent" was properly submitted in the definitional

Desert Rock's banking statement shows that amount was debited to its account.   Desert Rock's representative testified the electronic transfer was made in addition to Appellant's regular authorized pay.   Appellant registered a $2,171.16 transaction as a payment to "Utility Trailer."   The check that issued to Utility Trailer, however, it was only for the sum of $186.   The difference between $2,171.16 and $186 is $1,985.16.

portion of the charge.

### Standard of Review

Appellate review of purported error in a jury charge involves a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex.Crim.App. 2012). We first determine whether error occurred; if error did not occur, our analysis ends. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005); *Hailey v. State*, 413 S.W.3d 457, 495 (Tex.App.–Fort Worth 2012, pet. ref'd). This first step should not be limited to a review of just one part of the charge in isolation. *Selvage v. State*, 680 S.W.2d 17, 20 (Tex.Crim.App. 1984). Second, if error occurred, we then evaluate whether sufficient harm resulted from the error to require reversal. *Kirsch*, 357 S.W.3d at 649; *Ngo*, 175 S.W.3d at 743; *Hailey*, 413 S.W.3d at 495.

### The Indictment and Submission of Effective Consent in the Charge

The theft count (Count II) of the indictment alleged that Appellant:

[D]id then and there pursuant to one scheme and continuing course of conduct, which began on or about January 1, 2006, and continued until on or about August 31, 2008, unlawfully appropriate, by acquiring and otherwise exercising control over property other than real property, to-wit: U.S. Currency of the value of more than $200,000 from Desert Rock Company, Inc., the owner thereof, with intent to deprive the said owner of said property[.]

The application paragraph of the jury charge explicitly followed the theft count (Count II) in the indictment by stating that if the jury found beyond a reasonable doubt that Appellant:

[D]id then and there, pursuant to one scheme and continuing course of conduct which began on or about January 1, 2006, and continued until on or about August 31, 2008, unlawfully appropriate, by acquiring or otherwise exercising control over property other than real property, to wit: U.S. Currency of the value of more than $200,000 from Desert Rock Company, Inc., the owner thereof, with intent to deprive the said owner of said property, then you will find the [Appellant], Guilty as charged in Count II of the Indictment.

Immediately prior to the application paragraphs, the charge set out a section of definitions, which

13

stated in relevant part:

DEFINITIONS

. . .

A person commits the offense of "Theft" if the person unlawfully appropriates property with the intent to deprive the owner of the property. Appropriat[ion of] property is unlawful if it is without the owner's effective consent.

. . .

"Effective Consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion.

*Analysis*

As we understand Appellant's arguments, he does not complain about the substance of the "effective consent" instructions, just their placement in the charge. We first reject Appellant's argument that "without the owner's effective consent" was an essential element of theft in this case and was required to be placed in the application paragraph.

The only statutory elements for theft under the Penal Code are that the charged person unlawfully appropriated property with intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2015); *see Geick v. State*, 349 S.W.3d 542, 545-46 (Tex.Crim.App. 2011) (recognizing that unlawfully appropriating property with the intent to deprive the owner of the property are the only statutory elements of theft). As a general rule, these statutory elements are the only essential elements of the crime of theft. *See Geick*, 349 S.W.3d at 545-46; *see also Ex parte Luna*, 784 S.W.2d 369, 371 (Tex.Crim.App. 1990) (recognizing that an indictment need allege only "the elements constituting the offense of theft" that the person charged unlawfully appropriated property with the intent to deprive the owner of the property).

A statutory definition contained within the theft statute becomes an element of the offense

14

only when it is specifically pled in the indictment. *See Geick*, 349 S.W.3d at 547-48; *see also*

*Johnson v. State,* 364 S.W.3d 292, 294 n.10 (Tex.Crim.App. 2012) (recognizing *Geick* as standing

for the proposition that when pled, a statutory definition becomes an element of the offense).

Here, the State did not allege in the indictment a more narrow theft offense than required, other

than specifying one of the two means of appropriation—that appellant acquired or otherwise

exercised control over property other than real property. *See* TEX. PENAL CODE ANN. § 31.01(4)

(West Supp. 2015) (defining "appropriate" to mean either bringing about a transfer of title or

acquiring or otherwise exercising control over property other than real property). In the theft

statute, "effective consent" is included in the definition of "unlawfully appropriate," which is

defined to include three means in which one can "unlawfully appropriate" property:

> Appropriation of property is unlawful if: (1) it is without the owner's effective consent; (2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or (3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

*Id*. at § 31.03(b) (West Supp. 2015). Here, the State did not specifically allege in the indictment

"effective consent," or any of the three statutory definitions under which one can unlawfully

appropriate property. Thus, "effective consent" was not an essential element of theft in this case,

and the trial court was not required to place it in the application paragraph for that reason.

We also reject Appellant's argument that he raised a "defense" of consent that required an

instruction on "effective consent" be given in the application paragraph. First, appropriation

"without the owner's effective consent" constitutes one of several methods or means by which the

unlawful appropriation element of theft may be proved. TEX. PENAL CODE ANN. §§ 31.03(a),

(b)(1) (West Supp. 2015). A defendant is not entitled to a jury instruction on a defensive theory

15

that does nothing more than negate an element of the charged offense. *See Sanders v. State,* 707 S.W.2d 78, 80 (Tex.Crim.App. 1986); *Weaver v. State,* 722 S.W.2d 143, 148 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (holding that a requested instruction, which negated the consent and intent elements of theft, was properly denied).

Second, even if consent were a defense, the trial court would not be required to submit it in the application paragraph or anywhere else in the charge. We recognize that generally, a defendant is entitled to a jury instruction on every defensive issue raised by the evidence. *Allen v. State,* 253 S.W.3d 260, 267 (Tex.Crim.App. 2008). The Court of Criminal Appeals has concluded, however, that "because the authority to establish what constitutes a defense rests solely with the Legislature, this Court concludes a defense which is not recognized by the Legislature as either a defense or as an affirmative defense does not warrant a separate instruction." *Giesberg v. State*, 984 S.W.2d 245, 250 (Tex.Crim.App. 1998); *see Willis v. State*, 790 S.W.2d 307, 314 (Tex.Crim.App. 1990); *see also Mays v. State*, 318 S.W.3d 368, 386 n.59 (Tex.Crim.App. 2010). The Penal Code provisions for theft do not specifically recognize the lack of effective consent as a "defense" or an "affirmative defense" to theft. *See* TEX. PENAL CODE ANN. §§ 31.03(b) (defining that appropriation of property can be unlawful if it is without the owner's effective consent); 31.01(3) (defining that "effective consent" can include consent from a person authorized to act for the owner, and defining when consent is not effective). Accordingly, the trial court was not required to submit the "defense" of consent in the application paragraph. Issue Four is overruled.

### Ineffective Assistance of Counsel

In Issue Five, Appellant contends he suffered ineffective assistance of counsel when counsel failed to obtain admission of defense exhibits in support of his defensive theory of

16

effective consent. Appellant asserts that these exhibits would have shown various cash deposits into the personal account of the Desert Rock owners that would have corroborated his claim that the owners had authorized the excessive transfers to Appellant's account as part of a scheme in which he would kick-back a portion of the money to the owners in cash. He contends the trial court informed his trial attorney that it would admit the records if they supported this defensive theory, but that his counsel was unable to point out the transactions contained in the exhibits that would have supported admission on that basis.

### *Standard of Review*

In order to sustain a claim for ineffective assistance of counsel, the record must demonstrate that: (1) the trial counsel's performance was below an objective standard of reasonableness; and (2) the defendant was thereby prejudiced by the trial counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 688–89, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Ex parte Saenz*, __S.W.3d__, 2016 WL 1359214, at *5 (Tex.Crim.App. Apr. 6, 2016). The defendant must "prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that but for counsel's deficiency the result of the trial would have been different." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App. 1996); *Saenz,* 2016 WL 1359214, at *5 ("the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt").

Review of counsel's performance is highly deferential, and we must make every effort to eliminate the distorting effects of hindsight. *Saenz,* 2016 WL 1359214, at *5; *Wood v. State,* 4 S.W.3d 85, 87 (Tex.App.–Fort Worth 1999, pet. ref'd) (citing *Strickland,* 466 U.S. at 689, 104

17

S.Ct. at 2065). There is a strong presumption that counsel's conduct was reasonable, and consequently an ineffective assistance of counsel claim must be firmly founded in the record. *Saenz*, 2016 WL 1359214, at \*7.

Because of the need to ascertain trial counsel's strategy, courts have long recognized that the record on direct appeal is generally insufficient to show that counsel's performance was deficient under *Strickland*; consequently, ineffective assistance claims are usually best addressed by a post-conviction writ of habeas corpus. *See, e.g., Saenz*, 2016 WL 1359214, at \*\*6-7. "[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' . . . and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Id.* at 2016 WL 1359214, at \*6 (quoting *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)).

As the Court of Criminal Appeals has recently stated: "A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal. Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel." *Saenz*, 2016 WL 1359214, at \*7 (quoting *Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim.App. 1999)).

Thus, we may dispose of the claim on direct appeal only if counsel's ineffectiveness is apparent from the record. *Robinson v. State,* 16 S.W.3d 808, 813 (Tex.Crim.App. 2000). This is a difficult burden as the record must demonstrate that counsel's performance fell below an

18

objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066; *Lopez v. State,* 343 S.W.3d 137, 143 (Tex.Crim.App. 2011).

*Analysis*

After Gilbert Sanchez, one of the owners of Desert Rock, testified that Appellant's excess appropriations "practically broke us," Appellant's trial counsel proffered Defense Exhibits 4-11, which contained more than 1,000 pages of the owners' financial records, to show how they spent their money. The trial court denied the proffer and permitted defense counsel to make an offer of proof. During the offer of proof, trial counsel explained that through Exhibits 4-11, he was attempting to counter the testimony that Appellant's actions had left the family members "broke" by showing "they had plenty of money." The trial court noted that, "stealing a quarter of a million dollars from Bill Gates, who is a billionaire," is still theft as to Bill Gates, "whether it breaks him or not." The trial court informed trial counsel, however, that it would reconsider its ruling if he could show a Sanchez family member was part of "this theft" along with "numbers that coincide[.]" The trial court later reiterated that "If you can show me . . . how some of the monies that ended up in [Appellant's] account eventually ended up in [the owners' personal] account . . . I will let those records come in." The trial court further explained that if counsel could show that some percentage of the transferred money ended up in the owners' personal account "during these time periods it absolutely does become relevant" and admissible. Appellant's trial counsel stated, "In candor to the Court, no, I cannot."

On appeal, Appellant contends that Defense Exhibits 4-11 reveal on their face "countless

19

examples of transactions" that cash deposits were made into "various Sanchez family accounts[,]" and that those cash deposits "coincided with cash withdrawals from [Appellant's] account[.]" For example, Appellant attempts to align the money he took from Desert Rock's account on October 5, 2006, with his automatic teller machine (ATM) withdrawals between October 5, 2006 and October 7, 2006, and with cash that was "deposited into Desert Rock's bank account in similar amounts." He also contends that he "received" money from Desert Rock on December 1, 2006, and withdrew $300 from an ATM, and attempts to correlate a deposit of $290 cash into the Sanchez personal account on the same day. Appellant also asserts that his cash withdrawal of $100 on October 18, 2006, coincides with a cash deposit made to the Sanchez personal account, and claims that Gilbert and his wife "deposited cash amounts suspiciously close to amounts withdrawn" from his account, and that "[c]ountless similar examples are found throughout the bank records contained in Defense Exhibits 4-11."

Appellant argues that had defense counsel thoroughly reviewed the records, he would have been able to provide the trial court the monetary correlations it was seeking, and the records would have been admitted into evidence. He broadly contends, without going through or explaining the evidence in detail, that "[a] review of the documents shows the connection between Defense [E]xhibits 4-11" and the 118 transactions. Appellant contends this is sufficient to show that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and his failure to "properly advocate for the admission of the records severely hampered" Appellant's ability to present his defense. Appellant asserts that but for trial counsel's deficient performance, a reasonable probability exists that the result of the proceeding would have been different.

20

The record on appeal does not support these contentions. Our analysis of the proffered exhibits reveals only a weak and tenuous connection between Appellant's various cash withdrawals and deposits into the Sanchez family account. Given the presumption that trial counsel's conduct was reasonable, we can reasonably assume trial counsel did not pursue admission because he knew the limitations of what the records demonstrated and recognized the weakness of any argument that they established a correlation between Appellant's cash withdrawals and the deposits into the owners' personal account. In short, we cannot conclude that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. Further, there was the strong testimonial and documentary evidence establishing that Appellant had for years made unauthorized transfers to his personal account, and that he attempted to hide his actions from Desert Rock. Based on that evidence, we cannot conclude there is a reasonable probability that the fact finder would have had a reasonable doubt respecting Appellant's guilt if Exhibits 4-11 had been admitted for their consideration.

On this record, Appellant has failed to prove by a preponderance of the evidence that there was no plausible professional reason for trial counsel's acts. In the absence of additional evidence of trial counsel's reasons for his conduct, we cannot conclude that Appellant has demonstrated either that his counsel's performance was inadequate or that he was prejudiced by that performance. Consequently, Issue Five is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


STEVEN L. HUGHES, Justice

May 13, 2016

21

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)