

## NUMBER 13-20-00428-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

**TREY WAYNE FRICKS,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 24th District Court
of Refugio County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina
Memorandum Opinion by Justice Benavides**

Following a bench trial, Trey Wayne Fricks was found guilty of one count of making a false statement to obtain property, a third-degree felony, and one count of theft, a state jail felony. *See* TEX. PENAL CODE ANN. §§ 31.03, 32.32. In five issues which we have reorganized, Trey appeals from the trial court's judgment. Specifically, Trey argues that

the trial court erred by: (1) allowing his indictment for making a false statement to obtain property to be amended on the first day of trial; (2) finding him guilty of making a false statement to obtain property based on insufficient evidence; (3) allowing his indictment for theft to be amended on the first day of trial; (4) finding him guilty of theft when there was a fatal variance between the act alleged in the indictment and the proof offered at trial; and (5) finding him guilty of theft based on insufficient evidence. We reverse and render.

## I.     BACKGROUND

The history of this case begins in the year 1900, when members of the Brightman family began adversely possessing forty-five acres of the unincorporated town of St. Mary's in Refugio County. Unbeknownst to the Brightman family, in 1908, Refugio County began incorporating the land they were adversely possessing into a "plat" known as "Bayside Colony." On or about August 19, 1939, members of the Brightman family approached Hobart Huson, an attorney, to take any action necessary to help instill in them clear title to the land, and in consideration for such services, granted and conveyed to Huson a portion of the land in question. The Brightmans and Huson were successful in their endeavor, and later that same year, clear title to forty-five acres was confirmed in the Brightman family. On March 26, 1960, the Brightman family and Huson partitioned the lots in a recorded instrument and declared in that same instrument that "[a]ll former streets . . . [are] hereby opened and dedicated to the public as public roads or streets, and subject to the jurisdiction of public authority, and subject to easements for public

2

utilities." This included Chaparral Street, the street at issue in this case.

About fifty years later, the Fricks and Shaw families owned lots adjacent to Chaparral Street. According to Trey, beginning on or around August 31, 2011, David Fricks—Dorothy Fricks's son and Trey's brother—began attempting to adversely possess a portion of Chaparral Street that abutted his lot. David Fricks passed away intestate on June 26, 2012. On September 7, 2012, Dorothy and her husband, Billy Fricks, filed an application for administration and determination of heirship to distribute David's estate. A "full, true and complete [i]nventory and [a]ppraisement of all personal property and all real property" belonging to David "as of the date of death" was filed on May 14, 2013. David's purported interest in the adversely possessed portion of Chapparal Street was not listed in this document.

However, Dorothy testified that she believed David's interest in Chapparal Street nonetheless transferred to her and her husband upon David's death. On April 18, 2013, Dorothy and Billy signed a quitclaim deed renouncing all of their "RIGHTS, TITLES, INTERESTS, CLAIMS, AND DEMANDS" to the tract of land David had been adversely possessing in favor of Trey. Part of the deed described the property as "BEING ABANDONED AS DECLARED IN THE HOBART HOUSON [sic] PARTITION DEED OF 1960." The deed also provided that Trey paid ten dollars in consideration for this transfer, but both Dorothy and Trey testified that no such payment occurred.

Dorothy testified that she signed this quitclaim deed so that Trey would be able to continue adversely possessing the land and so that he could pay taxes on it. Specifically,

3

she testified that Trey "had to have some kind of deed to be able to pay taxes . . . because he went up to try and pay the taxes, and they wouldn't take them until [he] had a paper trail." In 2016, Trey began paying taxes on the land. On March 27, 2018, Trey, as a city council member, voted for the city to abandon its interest in the land in favor of the "virtue landowners." At trial, Richard Shaw testified that the intent of this resolution that eventually passed was for Trey to give the land to himself.

On August 23, 2019, Dorothy and Trey were indicted on one count of making a false statement to obtain property and one count of theft. The original indictments read as follows:

> [Count One]: On or about April 18, 2013 and anterior to the presentment of this indictment in Refugio County, Texas, [Trey] did then and there intentionally and knowingly make a materially false or misleading written statement to Refugio County Clerk, namely, Quit Claim Deed, with the intent to obtain property, namely: S/strip 41.3 x 400 between BLK 2 & BLK 3, St. Mary's, and the value of the property was $2,500 or more but less than 30,000[.]

> . . . .

> [Count Two]: On or about April 18, 2013, and anterior to the presentment of this indictment in Refugio County, Texas, [Trey] did unlawfully appropriate property, by acquiring or otherwise exercising control over property other than real property, to wit: S/strip 41.3 x 400 between BLK 2 & BLK 3, St. Mary's of the value of $2,500 or more but less than $30,000, without the effective consent of the owner, Town of Bayside, with intent to deprive said owner of said property[.]

On September 7, 2020, the defendants filed a motion to quash count two, the theft indictment, on the grounds that the face of the indictment indicated that prosecution was

4

barred by the statute of limitations. On September 8, 2020, the bench trial began, and Dorothy and Trey were tried together. The court began by hearing argument on the motion to quash. The State argued:

> The theft statue has a five-year statute of limitations. On this indictment, we listed April 18th, 2013. The State has evidence that it was part of an ongoing scheme where some of the acts occurred in 2013. Some of the acts occurred in 2018. We've given the Defense a copy of the act in 2018, which is a resolution [Trey] actually voted on and passed as a member of the city council in Bayside, Texas.
>
> . . . .
>
> He filed a deed on April 18th, 2013, and then he took possession of the land, but the land belongs to the State of Texas, so you can't adverse[ly] possess the State of Texas. And then in 2018, as a member of the city council, he voted to abandon the land and give it to what–in his resolution he calls "The Virtue Landowners," so it's our contention that the date is outside the statute of limitations, but it's an ongoing conspiracy theft and that we could have just as easily listed, I believe it's March 27th, 2018 on the indictment.
>
> The evidence is going to show that he committed acts within the statute of limitations in furtherance of this theft, and we think that the indictment is fine.
>
> We would agree to amend it to March 27th, 2018, if that's necessary, but we believe that as part of an ongoing theft that we can use the last date in which he acted as if it were an aggregate theft case. So in an aggregate theft case, the statute of limitations doesn't begin until that last act of theft. This is akin to that where it's an ongoing theft.

The trial court granted the State's request for leave to amend the indictment to include language alleging the theft occurred "[o]n or about April 13, 2018 thru [sic] March 27, 2018" and sua sponte granted the State leave to amend the indictment for making a false statement to obtain property to read the same. The trial court also directed that the

theft indictment be amended to remove the language "other than real property" from the manner of appropriation. Trey objected to all of the foregoing, claiming, "That does substantively change the indictment. That takes the State out of jeopardy for being past the statute of limitations . . . This substantively changes the charges, and it does act as a surprise." The trial court overruled Trey's objections.

Trey was found guilty of both counts. The trial court convicted him of the theft offense and sentenced him to two years' imprisonment, probated for five years. For making a false statement to obtain property, the trial court deferred Trey's adjudication and ordered five years of community supervision. He was also ordered to pay a fine of $5,000, complete one hundred hours of community service, and spend two weekends in jail for each count. This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02.

## II. SUFFICIENCY OF THE EVIDENCE

In his second and fifth issues, Trey argues that the State's evidence was not sufficient to prove beyond a reasonable doubt that he made a false statement to obtain property or that he committed theft.

### A. Standard of Review & Applicable Law

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not

6

unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.*

In reviewing evidence for sufficiency, we consider all of the evidence presented in the light most favorable to the verdict to determine whether the trial court was justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We defer to the trial court's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Id.*

## B.      Analysis of Count One

### 1.      Materially False or Misleading Statement

A person commits the offense of making a false statement to obtain property "if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit, including a mortgage loan." TEX. PENAL CODE ANN. § 32.32(b). In this case, the indictment charged that Trey made a materially false or misleading written statement to obtain the specific tract of land in question.

"The gravamen of an offense under § 32.32 is the making of a false or misleading statement, while obtaining property or credit is not even a required element." *Burke v. State*, 28 S.W.3d 545, 548 (Tex. Crim. App. 2000); *see Harris v. State*, 359 S.W.3d 625, 631–32 (Tex. Crim. App. 2011); *Jones v. State*, 343 S.W.3d 550, 552–53 (Tex. App.—

7

Fort Worth 2011, no pet.). "The offense is complete once the written, deceptive statement relevant to obtaining property or credit is made, even if the perpetrator is not successful in obtaining the property or credit as a result of his written deception." *Cheney*, 755 S.W.2d 123, 129 (Tex. Crim. App. 1988).

Trey contended at trial and on appeal that he had no involvement in drafting the deed, and thus, the State did not show an essential element of the offense; i.e., making the false or misleading statement. However, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). A person is criminally responsible for the conduct of another if, while "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Under the law of parties, "direct evidence" of each element of the offense "is not required." *Patterson v. State*, 606 S.W.3d 3, 24 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). The law of parties enables the State to enlarge a defendant's criminal responsibility to include acts in which he may not have been the principal actor. *Matter of D.A.K.*, 536 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

"To prove party liability, the State must show that the offense was committed *and* that the accused acted 'with intent to promote or assist commission of the offense' by soliciting, encouraging, directing, aiding, or attempting to aid the primary actor." *Cary v. State*, 507 S.W.3d 750, 757–58 (Tex. Crim. App. 2016) (emphasis added). "When the

8

defendant is not the primary actor, the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct." *Hughitt v. State*, 539 S.W.3d 531, 540 (Tex. App.—Eastland 2018), *aff'd*, 583 S.W.3d 623 (Tex. Crim. App. 2019); *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).

The State is not required to plead the law of parties in the indictment. *See Marable v. State*, 85 S.W.3d 287, 287–88 (Tex. Crim. App. 2002); *Justice v. State*, 532 S.W.3d 862, 865 (Tex. App.—Houston [14th Dist.] 2017, no pet.). And in a bench trial, where there is no charge, the judge is presumed to apply the law correctly. *Justice*, 532 S.W.3d at 865. Accordingly, if the evidence is sufficient to support a conviction under a party theory of liability, we need not consider whether the evidence is also sufficient to support a conviction under a principal theory of liability. *Id.* (citing *Humaran v. State*, 478 S.W.3d 887, 896 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)); *see also Patterson*, 606 S.W.3d at 24 ("Under the law of parties, direct evidence of each element of the offense is not required.") (internal quotations omitted). We look to events occurring before, during, and after the commission of the offenses and may rely on actions of the defendant which show an understanding and common design to commit the prohibited act. *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012).

Trey testified at trial that he filed the quitclaim deed "[a] year, close to a year" after his father built a fence around the property. Dorothy testified that she only signed the quitclaim deed to help Trey further his attempt to adversely possess the land. This shows that Trey acted with the "intent to promote or assist" and aided and encouraged Dorothy

9

in making the quitclaim deed. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2). Therefore, if the elements of making a false statement to obtain property were met, the trial court was permitted to find Trey guilty even if he did not make the written statements himself. *See id.* §§ 7.01(a), 7.02(a)(2), 32.32.

The indictment did not specify which statement in the quitclaim deed was materially false or misleading, nor did the trial court specify which statement it ultimately found to be false or misleading. Thus, we view all of the evidence in the light most favorable to the conviction to determine if any written statement made by Trey could be considered materially false or misleading. *See Brooks*, 323 S.W.3d at 899.

"The phrase 'materially false or misleading statement' is not vague or indefinite. Common understanding and usage makes clear that what is prohibited is false representation of material facts relevant to the purchase or sale of property or service." *Ely v. State*, 582 S.W.2d 416, 420 (Tex. Crim. App. [Panel Op.] 1979). Because the Statute of Frauds requires it, the legal description of a property in a written instrument is relevant to the purchase or sale of that property. *See Kmiec v. Reagan*, 556 S.W.2d 567, 569 (Tex. 1977) (citing TEX. BUS. & COM. CODE ANN. § 26.01); *Greer v. Greer*, 191 S.W.2d 848, 849 (Tex. 1946).

The legal description of the property in the deed signed by Dorothy stated in part that the 1960 Hobart Huson deed abandoned the property in question. The 1960 deed purports to do no such thing. Rather, it explicitly dedicates the property to public use. However, a legal description of a property need not be perfect, but merely "sufficient."

10

*See Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972). The legal description in the quitclaim deed otherwise clearly and correctly identifies the tract of land in question. It describes the property as being forty-one feet and three inches in width, lying between "BLOCK 2 AND 3," "RUNNING FROM FIRST STREET TO STRAND STREET," in the "ST. MARYS ADDITION TO THE TOWN OF BAYSIDE REFUGIO, COUNTY, TEXAS" and "AS RECORDED IN VOLUME 1, PAGE 10, OF THE MAP AND PLAT RECORDS OF REFUGIO CO., TEXAS."

In defining materiality in the context of perjury, the court of criminal appeals has held that "'materiality' refers to 'misstatements having some substantial potential for obstructing justice' and excludes 'utterly trivial falsifications.'" *Mitchell v. State*, 608 S.W.2d 226, 228 (Tex. Crim. App. [Panel Op.] 1980). And "whether a statement is material in a given factual situation is a question of law." *See* TEX. PENAL CODE ANN. § 37.04(c). In this case, the claim that the property had been abandoned is an "utter trivial falsification." *See Mitchell*, 608 S.W.2d at 228. Although a reference to a former deed is a valid means of describing land, the "reference to a prior deed does not prevail over a clearly contrary metes-and-bounds description." *Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 22–23 (Tex. 2015). Thus, the unambiguous metes-and-bounds description controls in the quitclaim deed, and the reference to the Hobart Huson deed is superfluous. *See id.*

Further, the fact that the ten-dollar consideration was not paid is similarly trivial. Our supreme court has adopted the position that an option contract in which consideration is recited, but not paid, is nonetheless enforceable. *See 1464-Eight, Ltd. V. Joppich*, 154

11

S.W.3d 101, 110 (Tex. 2004); *see also Lawrence v. McCalmont*, 43 U.S. 426, 452 (1844) (holding that a guaranty agreement which contained a fictional recital of nominal consideration was nonetheless enforceable). We similarly conclude here that the fictional recital in the deed of nominal consideration received was not material.

Lastly, the State's overall argument at trial was that Dorothy had no interest in the property and the quitclaim deed purporting to transfer "all" of her rights to Trey was therefore misleading. We disagree. Quitclaim deeds are "commonly used to convey 'interests of an unknown extent or claims having a dubious basis.'" *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 487 (Tex. 2005). Therefore, "a quitclaim deed *without warranty of title* cannot be a warranty (or 'misrepresentation') of title." *Id.* (emphasis in original). Here, there was no warranty of title included in the quitclaim deed. Although there are certain scenarios where a quitclaim deed may constitute a misrepresentation, this is not one of those scenarios, as no evidence was presented that the parties contemplated "anything other than a quitclaim deed." *See id.*

The indictment alleges that Trey made a "materially false or misleading written statement to Refugio County Clerk, namely, Quit Claim Deed, with the intent to obtain property." In viewing the evidence in the light most favorable to the trial court's verdict, as authorized by the indictment, we conclude that the evidence is insufficient to support finding Trey guilty of making a materially false or misleading statement to obtain property.

We sustain Trey's second issue.

**C.      Analysis of Count Two**

       **1.      Appropriation**

A theft occurs when (1) property is (2) unlawfully appropriated (3) by someone (4) with the intent to deprive the owner of that property. TEX. PENAL CODE ANN. § 31.03; *Byrd v. State*, 336 S.W.3d 242, 250 (Tex. Crim. App. 2011). Unlawful appropriation can either be committed by: (1) "bring[ing] about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another"; or (2) "acquir[ing] or otherwise exercis[ing] control over property other than real property." TEX. PENAL CODE ANN. § 31.01(4)(A), (B). Both the original and amended indictments alleged that Trey "did unlawfully appropriate property, by acquiring or otherwise exercising control over property." *See id.* § 31.01(4)(B). However, this manner of appropriation does not apply to real property. *See id.* Therefore, even if Trey acquired or otherwise exercised control over the real property in question, his act was not appropriation under § 31.01(4)(B). Thus, the evidence is insufficient to show appropriation. *See Malik*, 953 S.W.2d at 240 (defining a hypothetically correct jury charge, in part, as one "that accurately sets out the law").

The State was not required in this case to choose in its indictment between the two manners of appropriation by which theft can be committed. *See Geick v. State*, 349 S.W.3d 542, 547 (Tex. Crim. App. 2011) (per curiam). However, when the State decides between statutory alternatives in its indictment, those alternatives become "elements of latent, more specific offenses encompassed within our general theft statute." *Id.* Therefore, when "an indictment uses a statutory definition to specify how a theft was

13

committed, the State must prove the offense as charged in the indictment." *Id.* at 543.

The State provided no evidence that Trey unlawfully "acquired or exercised control over property *other than real property*." TEX. PENAL CODE ANN. § 31.01(4)(B) (emphasis added). As a result of specifying the statutory means of appropriation in its indictment, the "law as authorized by the indictment" did not permit the trial court to convict Trey on any alternative manner of appropriation. *See Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014). Therefore, the evidence was insufficient to find him guilty of theft. *See Geick*, 349 S.W.3d at 548.

We sustain Trey's fifth issue. Because we have sustained Trey's second and fifth issues, we do not address his remaining issues. *See* TEX. R. APP. P. 47.1.

### III.    CONCLUSION

We reverse and render judgment acquitting Trey of theft and making a false statement to obtain property.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P 47.2(b).

Delivered and filed on the
26th day of May, 2022.

14