

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOs. PD-0197-22, PD-0198-22, PD-0199-22

### FRANCISCO DELAROSA JR., Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### LIBERTY COUNTY

KEEL, J., delivered the opinion of the Court in which RICHARDSON, NEWELL, WALKER, and MCCLURE, JJ., joined. KELLER, P.J., filed a dissenting opinion in which HERVEY, J., joined. YEARY, J., filed a dissenting opinion. SLAUGHTER, J., dissented.

## O P I N I O N

This is a sufficiency-of-the-evidence case in which the indictment and jury

charges were a mishmash of non-consensual sexual assault and sexual assault of a child

under Texas Penal Code § 22.011.

On the one hand, the body of Appellant's indictment charged him with three

counts of sexual assault for non-consensual contact between his sexual organ and that of the pseudonymous complainant, LAM, and the abstract portion of the jury charge defined "sexual assault of a child" in terms of non-consensual sexual contact. *See* Tex. Penal Code § 22.011(a)(1). On the other hand, the indictment's caption called the counts sexual assault of a child, its application paragraph authorized conviction for sexual assault of a child, and the case was tried as if it were such a case. *See id.* § 22.011(a)(2).

We granted review to decide whether the court of appeals erred in holding that the evidence was legally sufficient to uphold the convictions. It did. Consequently, we reverse the lower court's judgments and enter a judgment of acquittal for each count of sexual assault.[1]

## I. The Indictment and the Jury Charges

The indictment's heading listed the three counts as "sexual assault of a child" and cited Texas Penal Code § 22.011(a)(2). But the body of each indicted count alleged that on three dates Appellant contacted LAM's sexual organ without her consent. *Id.* § 22.011(a)(1).

The opening paragraph of the jury charges said that Appellant had been indicted for sexual assault of a child. A subheading under "Definitions and Instructions" said "Sexual Assault of a Child" and was followed by a paragraph defining non-consensual sexual assault: "A person commits an offense if the person intentionally or knowingly

---

[1]Appellant was also convicted of tampering with evidence and improper relationship between educator and student and sentenced to five and twenty years, respectively. Those convictions are not at issue here.

causes the sexual organ of another person, without that person's consent, to contact the sexual organ of another person, including the actor." *See id.* The application paragraphs, however, authorized conviction for sexual assault of a child; to convict Appellant, the jury had to find beyond a reasonable doubt that he intentionally or knowingly contacted the sexual organ of LAM, a child younger than 17 years of age, with his sexual organ. *See id.* § 22.011(a)(2).

In short, the indictment's heading referenced sexual assault of a child, and the jury charges' application paragraphs authorized convictions for sexual assault of a child. The body of the indictment, however, charged Appellant with non-consensual sexual assault, and the abstract portion of the jury charges defined the charged offenses as non-consensual sexual assault.

No objections were raised to any of the foregoing.

## II. The Evidence

The evidence at trial centered on Appellant and LAM's relationship and whether they had sexual intercourse. Appellant was employed by LAM's school district, and LAM and Appellant's daughter became good friends after meeting through a softball program in middle school.

LAM testified that she spent the night at Appellant's house regularly to hang out with Appellant's daughter. She said she usually slept in Appellant's bedroom because "he told me to." She testified that he bought her gifts including lingerie and an engagement ring that she picked out. LAM stated that they had sex "every weekend"

when she was between fourteen and seventeen years old. But she acknowledged that sometimes she would stay the night at another friend's house so it could not have been every weekend. After some of LAM's extended family expressed concern about LAM and Appellant's closeness, LAM denied having a relationship with Appellant. Months later LAM disclosed the relationship to a school resource officer and wrote in her statement, "I am aware that I am a minor and unable to give consent." LAM testified that she thought she was "in love" with Appellant during their relationship but was no longer because, "I'm not in his chains anymore." No one asked whether she had consented to the sexual contact.

Appellant testified that he had a relationship with LAM while she was a minor but denied having sex with her. He fell in love with her the summer after she finished eighth grade. He admitted sending her "I love you" text messages three months after they met. Appellant testified that LAM used his phone to order lingerie, but he did not receive it. He agreed that LAM would sometimes sleep in his bed, but he would sleep elsewhere. The prosecutor asked, "[Y]ou're not disputing your relationship with her; you're not disputing you're in love with her. The only thing you're disputing is that you had sexual intercourse with her?" Appellant replied, "Yes. Correct."

Appellant was found guilty of three counts of "Sexual Assault of a Child" as listed on the jury verdict forms. The judgment likewise stated that he was convicted of sexual assault of a child. On appeal, Appellant argued, among other things, that the evidence did not prove LAM's lack of consent and that there was jury charge error because he was

indicted for one offense but tried for another.

## III.   Court of Appeals

The court of appeals held that, even though the jury charge should have asked whether the sexual assaults occurred without LAM's consent, the evidence was sufficient to support Appellant's convictions.   *Delarosa v. State*, Nos. 09-19-00408-CR, 09-19-00409-CR, 09-19-00410-CR, 09-19-00411-CR, 09-19-00412-CR, 2022 WL 710063, at *6 (Tex. App.—Beaumont March 9, 2022) (mem op., not designated for publication). Since the indictment alleged "without consent," the State had to prove lack of consent. *Id.* at *4.   The evidence of lack of consent was sufficient for two reasons.

First, the court concluded that minority is a "defect" under Texas Penal Code § 22.011(b)(4).   *Id.* at *6.   Section 22.011(b)(4) states that a sexual assault is without consent under § 22.011(a)(1) if "the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it[.]"   Tex. Penal Code § 22.011(b)(4).   The court held that the State proved lack of consent by proving LAM's age and Appellant's knowledge of her age.   *Delarosa*, 2022 WL 710063, at *6.

Second, the court stated that Appellant did not contest lack of consent but only whether sexual contact occurred.   *Id.*   Even if lack of consent had been included in the jury charge, the court was "convinced the jury would still have convicted [Appellant] given his admission that he was not contesting any of the issues and that instead he claimed the two of them had never engaged in any sexual acts."   *Id.*

The court then determined that jury charge error occurred and addressed harm. *Id.* at \*7. It concluded that although the jury was not required to find that the sexual assaults occurred without LAM's consent, Appellant did not suffer egregious harm. The evidence proved that LAM was a minor when the sexual contact occurred, and "no rational juror could have found from the evidence admitted in the trial that [Appellant] was unaware that [LAM] was not yet seventeen when the three sexual assaults occurred[.]" *Id.* at \*8.

After addressing Appellant's remaining issues, the court of appeals affirmed and remanded to the trial court to correct the judgments to reflect that Appellant was convicted of three counts of sexual assault instead of sexual assault of a child. *Id.* at \*10. We granted review to decide whether the court of appeals erred in assessing the legal sufficiency of the evidence and the egregiousness of the jury charge error. Because the evidence was legally insufficient, we do not reach the jury-charge issue.

## IV. Legal Sufficiency

A determination of evidentiary sufficiency does not turn on how the jury was instructed. *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018) (citing *Musacchio v. U.S.*, 577 U.S. 237, 243 (2016)). Instead, it is measured by the essential elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's

theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument. *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). When an indictment alleges one of several statutory methods of committing a crime, "'the law as authorized by the indictment' is limited to the method specified by the indictment." *Geick v. State*, 349 S.W.3d 542, 545 (Tex. Crim. App. 2011).

When the sufficiency of the evidence turns on the meaning of a statute, we review the statutory construction question *de novo*. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). We must give effect to the plain meaning of the statute's language "unless the statute is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Id.* The plain meaning is discerned by reading the statute in context, giving effect to each word, phrase, clause, and sentence if reasonably possible, and construing them according to applicable technical definitions and according to the rules of grammar and common usage. *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020). It is presumed that the legislature intended each word to have a purpose. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). We do not consider extra-textual factors unless the plain meaning is ambiguous or would lead to absurd results that the legislature could not possibly have intended. *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991).

The evidence is legally sufficient if "any rational juror could have found the

essential elements of the crime beyond a reasonable doubt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## V.   The Sexual Assault Statute

We understand Section 22.011 to define sexual assault in two ways; one definition depends on lack of consent, and the other depends on the age of the complainant.   The statute dispenses with consent in the second scenario; it does not say that a child cannot consent; it does not mention consent at all.   Our understanding is supported by the statute's plain language and its affirmative defenses, and it leads to no absurd consequences.

## A.   The Statute's Plain Language

The first definition of sexual assault depends on lack of consent:

> (a) A person commits an offense if:
> (1) the person intentionally or knowingly:
> (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent;
> (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or
> (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor[.]

Tex. Penal Code § 22.011(a)(1).   The second definition of sexual assault depends on the victim's age:

> (a) A person commits an offense if:
> (2) regardless of whether the person knows the age of the

> child at the time of the offense, the person intentionally or knowingly:
>> (A) causes the penetration of the anus or sexual organ of a child by any means;
>> (B) causes the penetration of the mouth of a child by the sexual organ of the actor;
>> (C) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;
>> (D) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or
>> (E) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor.

*Id.* § 22.011(a)(2). This plain language distinguishes the two types of sexual assault by defining one in terms of lack of consent and defining the other in terms of the victim's age.

That distinction is highlighted by subsection (b); it specifies fourteen circumstances under which a sexual assault is without consent "under Subsection (a)(1)." *Id.* § 22.011(b). By limiting the "without consent" circumstances to the first definition of sexual assault, the statute excludes their consideration from the second definition, and that supports a reading of the statute under which consent is irrelevant to sexual assault of a child. It also forecloses a reading of the statute under which a child is incapable of consent, and that foreclosure is supported by the two affirmative defenses offered by the statute.

## B. The Two Affirmative Defenses

The statute provides two affirmative defenses to sexual assault of a child, and they

are based on the relationship between the defendant and the complainant.

First is a marital relationship. It is an affirmative defense "that the actor was the spouse of the child at the time of the offense." *Id.* § 22.011(e)(1). Second is a "Romeo and Juliet" relationship. It is an affirmative defense that "the actor was not more than three years older than the victim at the time of the offense[,]" was not a sex offender under Chapter 62 of the Code of Criminal Procedure, and was unrelated to the victim for purposes of the incest statute, Texas Penal Code § 25.02, and the child was at least fourteen years of age. *Id.* § 22.011(e)(2). These relationship-based affirmative defenses show that a child is capable of consent but that consent is irrelevant to the offense outside of these circumstances.

## C. No Absurd Consequences from Plain Language

Reading § 22.011(a)(2) as dispensing with consent leads to no absurd consequences. The State argues that such a reading would result in legal, consensual sexual contact with a minor as long as the State charges the defendant under § 22.011(a)(1). But the State decides what to charge. *See Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). It can charge a defendant with sexually assaulting a non-consenting child under either section; if it charged the defendant with sexual assault of a child under § 22.011(a)(2), it would not have to prove lack of consent. But when a defendant is charged under § 22.011(a)(1), lack of consent is an essential element that the State must prove.

## VI. Analysis

Appellant was indicted for three counts of non-consensual sexual assault of LAM. The hypothetically correct jury charge would have required the State to prove beyond a reasonable doubt that: (1) on the dates alleged, (2) Appellant intentionally or knowingly, (3) contacted the sexual organ of LAM, (4) by Appellant's sexual organ, (5) without LAM's consent. *See* Tex. Penal Code § 22.011(a)(1)(C); *Cada v. State*, 334 S.W.3d 766, 772–73 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 313 (1979)) ("Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged.").

No evidence showed that the sexual contacts were without LAM's consent. On the contrary, her testimony suggests that she willingly participated in them. She testified to a later change of heart but never expressed any lack of consent contemporaneous to the sexual contacts.

The court of appeals, however, held that LAM's lack of consent was proven through LAM's mental defect as a minor under § 22.011(b)(4) and through Appellant's failure to contest LAM's lack of consent. *Delarosa*, 2022 WL 710063, at *6. But § 22.011(b)(4), unlike other statutes, does not say that minority is a mental disease or defect, and Appellant's denial of any sexual contact with LAM was not evidence of her lack of consent.

Section 22.011(b)(4) says that a sexual assault is without consent if the defendant "knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable either of appraising the nature of the act or of resisting it[.]"

Tex. Penal Code § 22.011(b)(4). It does not specify minority as a mental disease or defect or as a basis for concluding that a complainant cannot appraise or resist sexual contact. But other sections of the Penal Code do.

For example, the Penal Code distinguishes "consent," meaning "assent in fact, whether express or apparent," from "effective consent." *Id.* § 1.07(a)(11). Consent is not effective if "given by a person who by reason of youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable decisions[.]" *Id.* § 1.07(a)(19)(C). Several sections of the Penal Code require effective consent or otherwise prevent consent by reason of youth. *E.g.*, § 30.02(a) (burglary); § 31.03(3)(C) (theft); §33.01(12) (computer crimes). Section 22.011(b)(4)'s failure to reference youth as a way to find lack of consent, coupled with other statutes' references to it in defining effective consent, demonstrate that the legislature did not intend for minority to apply in this subsection. *See Campbell v. State*, 49 S.W.3d 874, 876 (Tex. Crim. App. 2001) (noting that the legislature's use of language in one section of the Penal Code but not another was intentional). And the omission is all the more significant because minority is addressed in its own subsection. *See* Tex. Penal Code § 22.011(a)(2).

Further, the court of appeals erred when it asserted its certainty that under a proper jury charge "the jury would still have convicted [Appellant] given his admission that he was not contesting any of the issues and that instead he claimed the two of them had never engaged in any sexual acts." *Delarosa*, 2022 WL 710063, at *6. Appellant's denial of any sexual contact does not support an inference of non-consensual, sexual

contact. *Cf. Hooper*, 214 S.W.3d at 15 (stating that reasonable inferences must be supported by the evidence presented at trial). It would be anomalous to find evidence of a crime in a defendant's testimony that he committed no crime.

The evidence is legally insufficient to support Appellant's convictions for sexual assault because LAM's lack of consent was not proven, but the dissenting opinion and the State argue otherwise.

## VII. Counter-Arguments

The dissenting opinions and the State argue that (A) Appellant was indicted for sexual assault of a child because the indictment's heading named the counts accordingly. The State argues two other points in the alternative: (B) Children cannot consent to sex with adults, and so a conviction for sexual assault of a child is also a conviction for non-consensual sexual assault. In other words, "child" is a proxy for "without consent." (C) Minority is indeed a mental defect foreclosing the possibility of consensual sex between a minor and an adult, so LAM's youth proved that sexual contact between her and Appellant was without consent under § 22.011(b)(4), and the evidence was legally sufficient to prove non-consensual sexual assault.

## A. Was Appellant Indicted for Sexual Assault of a Child?

The Presiding Judge's dissent argues that since the caption indicated that the victim was a child, this omission of "child" from the body of the charging instrument "made the indictment ambiguous, meaning that it was defective[,]" and so Appellant's "failure to object forfeited his right to claim that he was not charged with sexual assault

of a child." P.J. Keller's Dissenting Opinion at 7. The body of this indictment, however, completely alleged non-consensual sexual assault, omitting no element. It was not defective. It was facially complete. "The instant cause does not involve a charging instrument which is even arguably defective on account of its failure to include one or more allegations necessary to give notice of the statutory offense with which the defendant was charged." *Duron v. State*, 956 S.W.2d 547, 551 (Tex. Crim. App. 1997). In such a situation, there is no indictment error, and the sufficiency of the evidence must be measured against the indictment's allegations. *Thomason v. State*, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994). "[W]here an indictment facially charges a complete offense, the State is held to the offense charged in the indictment, regardless of whether the State intended to charge that offense." *Id.*

We earlier declined the State's invitation to disavow *Thomason*. *Kirkpatrick v. State*, 279 S.W.3d 324, 327-28 (Tex. Crim. App. 2009). Instead, we distinguished *Thomason* in part because Thomason's "indictment, on its face, alleged a felony, albeit not the felony the state intended to charge. There was no question that the trial court had subject-matter jurisdiction over the offense alleged on the face of the indictment." *Id.* at 327-28.

Just so here. Subject-matter jurisdiction is not at issue, the body of the indictment alleged non-consensual sexual assault, and the State had to prove it though that was not the felony it intended to charge. *See Thomason*, 892 S.W.2d at 11. Having alleged non-consensual sexual assault, the State was bound to prove it. *Curry*, 30 S.W.3d at 405

(holding that where the law defines different methods of committing a crime, and the indictment alleges one of those methods, it must be proved).

The Presiding Judge's dissent relies on *Jenkins* as authority for looking at the charging instrument "as a whole." P.J. Keller's Dissenting Opinion at 5 (quoting *Jenkins v. State*, 592 S.W.3d 894, 899-900 (Tex. Crim. App. 2018)). But the purpose of doing so in that case was to decide whether the charging instrument met the constitutional definition of an indictment, not to choose one theory of prosecution over another for sufficiency analysis. *Jenkins*, 592 S.W.3d at 900. The allegation failed to name Jenkins as the defendant, and he argued that it failed to charge "a person" with a crime as required by the constitutional definition of "indictment." *Id.* at 898. The caption, however, included his name, address, and state ID number, thus giving him "notice that he was the defendant referred to in the indictment." *Id.* at 901-02.

The Presiding Judge's dissenting opinion contends that our holding will lead to anomalous results by allowing a caption to confer jurisdiction for a felony without authorizing conviction for the felony. P.J. Keller's Dissenting Opinion at 6. But its hypothetical example—an indictment's body alleging a Class C assault with a caption referencing indecency with a child—differs from this case. Here, the body of the indictment alleged a facially complete felony—not a misdemeanor—and having alleged it, the State was bound to prove it, not something else. *Thomason*, 892 S.W.2d at 11. The real anomaly would be to mix and match the caption and the body of the indictment and uphold a conviction on a theory of prosecution not alleged anywhere—child under

17—and sacrifice the theory that was alleged—lack of consent.

Judge Yeary's dissenting opinion sees no defect in the indictment but argues that the caption "charged and accused Appellant" of sexual assault of a child. J. Yeary's Dissenting Opinion at 6–7. But the caption made no allegation. It said, "Charge: Count [I/II/III] - SEXUAL ASSAULT OF A CHILD" and "22.-11(a)(2)" without making any claims. There was no sentence in the caption. There was not even a sentence fragment. *Cf. Jenkins*, 592 S.W.3d at 903 (Keller, P.J., concurring) (noting that "a poorly worded sentence fragment" did not allege commission of an offense).

Since we are limited to the statutory method alleged, *Geick*, 349 S.W.3d at 545, and may not entertain one that was not alleged, *id.* at 547, we cannot uphold this conviction.

The State cites *Miles v. State* in which we considered a notation at the top of the indictment to determine the level of codeine offense for which Miles had been tried. 357 S.W.3d 629, 633–34 (Tex. Crim. App. 2011). Ultimately, however, *Miles* did not rely on the notation in reaching its holding about the sufficiency of the evidence because the notation did "not affect the facts, or lack thereof, that were actually alleged and tried to the jury." *Id.* at 637. Moreover, in determining the hypothetically correct jury charge, *Miles* may have over-emphasized "the particular offense for which the defendant was tried" at the expense of the charge "authorized by the indictment" as limited by the statutory manner and means it alleged. *See id.* at 643–44 (Keller, P.J., dissenting).. As the State acknowledges, "a variance involving statutory language that defines the offense

always renders the evidence legally insufficient to support the conviction (*i.e.*, such variances are always material)." *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App. 2012).

The State faults Appellant for not objecting to the indictment, but doing so would have alerted the State to its mistaken charge and sacrificed a potentially more defensible charge under § 22.011(a)(1) as compared with a charge under § 22.011(a)(2). The State suggests no reasonable strategy that would have supported such an objection, nor can we think of one. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984). It is the State's duty to prepare the "indictment found by the grand jury[.]" Tex. Code Crim. Proc. art. 20A.302. It would be perverse to rescue the State from its inattention to that duty by requiring an arguably deficient performance by defense counsel.

The State points to evidence offered and arguments made at trial to support its claim that Appellant was indicted for sexual assault of a child; it maintains that "everyone knew" Appellant was charged with sexual assault of a child, so he was. But "it is not sufficient to say that the accused knew" what he was charged with. *Riney v. State*, 28 S.W.3d 561, 565 (Tex. Crim. App. 2000). "The inquiry must be whether the charge, in writing, furnished that information in plain and intelligible language." *Id.* Working backwards from the trial to decide what the indictment charged would violate due process. *See Jackson*, 443 U.S. at 314 (noting that "conviction upon a charge not made" would violate due process).

The caption's reference to sexual assault of a child did not make the indictment

defective. Its body alleged a facially complete offense of non-consensual sexual assault. Having alleged it, the State was obliged to prove it.

## B. Is "Child" a Proxy for "Without Consent?"

The State claims that children cannot legally consent to sexual contact no matter what statutory language is alleged in the indictment, so "child" is a proxy for "without consent." But the statute does not say that children cannot consent; it omits any mention of consent from § 22.011(a)(2). Our Legislature could have said that children cannot consent to sexual contact with adults; other legislatures have. *Cf., e.g.*, N.Y. Penal Law § 130.05(3) (McKinney 2021) ("A person is deemed incapable of consent when he or she is: (a) less than seventeen years old"); Ky. Rev. Stat. Ann. § 510.020(3) (West 2018) ("A person is deemed incapable of consent when he or she is: (a) Less than sixteen (16) years old"). But it did not do so. *Cf.* Act of April 2, 1918, 35th Leg., 4th C.S., ch. 50, § 1, 1918 Tex. Gen. Laws 1, 123 (repealed 1973) (stating that, under a former Texas Penal Code provision, rape is "the carnal knowledge of a female under the age of eighteen years, other than the wife of the person, with or without her consent[.]"); *Hindman v. State*, 211 S.W.2d 182, 185 (Tex. Crim. App. 1948) ("In statutory rape the issue of consent cannot arise, for that offense is complete with or without the consent of the prosecutrix."); *Parks v. State*, 241 S.W. 1015, 1017 (Tex. Crim. App. 1922) (op. on reh'g) (concluding that the child-victim's consent was in issue when the defendant was charged with two counts of rape under different theories). But our Legislature did not; instead, it created two ways of charging sexual assault—one that has a lack-of-consent

element and one that criminalizes sexual contact with children regardless of consent. If minority meant lack of consent, then there would be no need for the two definitions of sexual assault; Subsection (a)(2) would be superfluous.

The State counters that Subsections (a)(1) and (a)(2) are not mutually exclusive, and therefore Subsection (a)(2) would not be superfluous if it were read as a specific version of non-consensual sexual assault. But the statute is not written that way; one subsection defines sexual assault in terms of lack of consent, and the other in terms of the victim's age; consent is irrelevant in a case of sexual assault of a child. *Garcia v. State*, 661 S.W.2d 96, 99 (Tex. Crim. App. 1983) (McCormick, J., concurring).

The State points to cases that say children cannot consent to sex with adults. *E.g.*, *In re B.W.*, 313 S.W.3d 818, 820 (Tex. 2010); *Fleming v. State*, 455 S.W.3d 577, 582 (Tex. Crim. App. 2014). But those cases did not address the plain language of § 22.011.

The State points out that charging non-consensual sexual assault under Subsection (a)(1) does not make sexual contact between an adult and a child legal. Even so, it puts the burden on the State to prove lack of consent, a burden it could avoid by charging sexual assault of a child under Subsection (a)(2).

In the variance vein, the State also argues that any variance should not be considered fatal for two reasons. First, "[e]veryone involved with trial knew the State intended to pursue three counts of sexual assault that involved a child victim," and second, the caption listing sexual assault of a child shows that the grand jury and Appellant knew what offense was being charged.

A variance occurs when the proof at trial differs from the allegations in the charging instrument. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). A variance involving the statutory language that defines the offense always renders the evidence legally insufficient. *Johnson*, 364 S.W.3d at 294.

In this case, the State alleged that the sexual assaults occurred without LAM's consent but proved only that she was under age 17. We decline to hold that a statutory-language variance does not render the evidence legally insufficient when "everyone knew" what offense was being charged. We instead adhere to the constitutional requirement that the State prove every statutory element alleged in the charging instrument. *See Cada*, 334 S.W.3d at 776.

## C. Does "Mental Defect" under § 22.011(b)(4) Include Minority?

The State claims § 22.011(b) is not an exclusive list of ways to prove "without consent." It acknowledges that the plain language of § 22.011(b) does not use terms of enlargement like "includes" but argues the plain language also does not suggest the list is exclusive. But even if § 22.011(b) is illustrative rather than exclusive, nothing proves that LAM did not consent to the sexual contact.

The State argues that a jury could rationally conclude that "mental defect" includes the diminished capacity of a minor under § 22.011(b)(4). But as explained above, the legislature did not include "youth" in the § 22.011(b)(4) language like it did in similarly worded sections of the Penal Code. *See* Tex. Penal Code §§ 1.07(a)(19)(C), 31.01(3)(C). This suggests that the legislature considers mental defects and youth to be

separate circumstances. And even if we upheld the State's theory that mental defect could reasonably include youth, no evidence shows that LAM was "incapable either of appraising the nature of the act or of resisting it" because of her age when the sexual contact occurred. Merely proving her young age would not do so any more than proving a low IQ would; the evidence also would have to show that she could not appraise or resist the act. *See, e.g.*, *Meuret v. State*, 500 S.W.3d 539, 550 (Tex. App.—San Antonio 2016, no pet.) ("In addition to determining whether the evidence supports a finding of mental disease or defect, we must also determine whether the evidence supports a finding that [the victim] was incapable of appraising the nature of the sexual act or resisting the act due to her mental disease or defect."); *Hopkins v. State*, 615 S.W.3d 530, 540–41 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (holding that a victim with low IQ and "mild intellectual impairment" could not appraise the nature of the sexual act in part because he testified that he was afraid, confused, felt he should do what he was told, and thought he could get help from his parents afterward).

## VIII.  Conclusion

The State alleged that Appellant committed three counts of sexual assault without LAM's consent, so it was required to prove that beyond a reasonable doubt. Since it did not, the evidence is legally insufficient to support Appellant's sexual assault convictions. We reverse the judgments of the court of appeals and enter judgments of acquittal.

Delivered: October 4, 2023

Publish